IN RE INTEREST OF L.W., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. T.W., APPELLANT.
486 N.W.2d 486

Filed July 24, 1992.    No. S-91-751.

William J. Erickson, Custer County Public Defender, for appellant.

Glenn A. Clark, Custer County Attorney, and Howard W. Spencer, guardian ad litem, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This is a juvenile case in which a petition was filed in the juvenile court of Custer County by the county attorney on April 5, 1989. It alleged that the child, L.W., was in a situation injurious to her morals for the reason that between January 1

and April 5, 1989, said child, residing within Custer County, was subjected to an act of sexual penetration by her stepfather while the child was in the custody of her mother and stepfather. The State asked that the child be adjudicated a juvenile within the provisions of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) and that she be cared for and protected according to law.

On the same day the petition was filed, a motion was also filed which showed that the juvenile had been taken into protective custody under the provisions of Neb. Rev. Stat. § 43-248 (Reissue 1988) and placed with the Nebraska Department of Social Services (DSS), pursuant to Neb. Rev. Stat. § 43-250(4) (Reissue 1988). The motion also requested a hearing pursuant to Neb. Rev. Stat. § 43-253 (Reissue 1988). Again on the same day, with the mother present in court, an order awarding temporary custody to DSS was entered. A guardian ad litem was appointed for the child.

A further hearing was held on April 11, 1989, at which hearing counsel was appointed for the mother and an adjudication hearing was set for May 9. The hearing was in fact held on May 15, 1989, and the order entered recited that the "father" waived appearance, the mother appeared with counsel, and the mother and the juvenile admitted the allegations. The court determined there was a factual basis for the admissions, and an adjudication was entered accordingly. The case then proceeded immediately to a dispositional hearing, at which the court continued custody in DSS, terminated a previous support order entered against the mother, and set the matter for a review hearing on November 6, 1989.

A review hearing was in fact held on November 13, 1989, with the mother and her counsel and the *natural* father appearing, at which evidence was adduced and the court ordered that custody continue in DSS. It also recommended placement of the child in a foster home and ordered DSS to submit a plan within 30 days.

On May 21, 1990, a review hearing was held, attended by the mother and her counsel. A case plan was filed with the court, to which the mother objected. The hearing was continued to July 10, and the court made temporary findings that reasonable

efforts had been made to eliminate the need for removal of the child from her family home, but that such efforts had failed and that return of the child to her family home would be contrary to the welfare of the child.

A review hearing was held on July 23, 1990, with the mother and her counsel present. The mother objected to the case plan, the court ordered the plan be adopted, and, on motion, the stepfather was dismissed from the proceedings. A review hearing was set for January 8, 1991.

At a review hearing held on January 15, the mother's counsel was permitted to withdraw and the public defender was appointed in his stead to represent the mother. At that hearing, the record indicates no objection to the case plan. Further hearing was set for July 15, 1991.

On March 5, 1991, a pleading entitled "Objection to Plan" was filed, in which it was alleged by the mother through her counsel that the pleadings required by "N.R.S. Section 43-1209" had not been made; the examination necessary under "43-1206(2) was not made" and therefore the necessary jurisdictional findings under "N.R.S. Section 43-1203(1)(d)(i)" could not be made; that there was a prior custody determination in Pottawattamie County, Iowa, in a dissolution of marriage action styled *Woods v. Woods*; that the Iowa court had continuing jurisdiction of the minor child by virtue of 28 U.S.C. § 1738A(d) (1988); and that as a result, the trial court should reject the plan and dismiss the action for want of subject matter jurisdiction.

During a hearing held on April 1, 1991, the court overruled the mother's motion to dismiss. The mother also, through counsel, and based on Neb. Rev. Stat. § 43-1206(3) (Reissue 1988), stated, "I submit that a stay in these proceedings might be worthwhile." The court treated that as a motion for stay and overruled it. The mother filed a notice of appeal to the district court on April 23, 1991, complaining of the trial court's action in overruling her two motions.

On appeal to the district court, that court found that the mother is and has been a resident of the State of Nebraska for at least 6 months prior to the filing of the petition; the natural father of the child is and has been a resident of the State of Iowa

during the pendency of the action; the child has been a resident of the State of Nebraska for at least 6 months prior to the filing of the petition; the juvenile court could properly take jurisdiction for the protection of the child under "Sections 43-247 and 43-1203(a)(b)(c)(d) NEB. REV. STAT. (Reissue 1988)"; the appellant mother did not object to the jurisdiction of the juvenile court of Custer County from "4/5/89, until 3/5/91"; and the

> evidence does not clearly show that an action is still pending in Iowa, requiring the County Court to communicate with the Iowa Court under Section 43-1206(3) NEB. REV. STAT. (Reissue 1988). *This may be required if the County Court intends to change the custody from the mother to the father in the future.*

(Emphasis supplied). Accordingly, the district court affirmed the judgment of the juvenile court in all respects and remanded the cause to the county court for further proceedings consistent with that order. It is from that order, dated July 1, 1991, that the mother appeals to this court.

The mother assigns as error the finding by the court that the provisions of the Nebraska Child Custody Jurisdiction Act, Neb. Rev. Stat. § 43-1201 et seq. (Reissue 1988), did not apply to matters arising under § 43-247(3); the failure of the court to find that the provisions of the Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. § 1738A (1988), were applicable to this matter; the finding that the juvenile court had subject matter jurisdiction of this matter in the absence of compliance with the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA) and the PKPA; and the court's refusal to stay the proceedings and communicate with the appropriate foreign court as required by the UCCJA and the PKPA. We are governed in our review by the following rule:

> On appeal of any final order of a juvenile court, an appellate court tries factual questions de novo on the record and is required to reach a conclusion independent of the findings of the trial court, but, when the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than

another.
*In re Interest of D.M.B.*, 240 Neb. 349, 352, 481 N.W.2d 905, 909 (1992).

The juvenile was born on August 2, 1976, and is the biological child of T.W., the mother, and M.W., the natural father. The parents were divorced in Iowa in 1976, and custody of the child was granted to the mother. After the divorce, the mother married H.G., who became the child's stepfather. Sometime after January 1, 1989, and before April 5, 1989, while in Custer County, Nebraska, the child was subjected to sexual abuse by her stepfather.

As previously noted in the recitation of the various orders entered, the mother was present at all hearings, was represented by counsel, and admitted the allegations of sexual abuse. DSS concluded and advised the court that it could not be assured of the child's safety with the mother, due to the instability of the mother's relationships and the fear expressed by the child of the men in her mother's life. As a result, DSS prepared a case plan, which anticipated the placement of the child with her natural father. The father's situation, safety, and stability would be investigated by the Iowa Department of Social Services through a home study. The juvenile court adopted the plan on January 15, 1991. This change in placement, if accomplished, conflicts with the Iowa divorce decree which granted custody to the mother.

Section 43-247 provides:

> The juvenile court shall have exclusive original jurisdiction . . . as to any juvenile defined in subdivision (3) of this section . . . .

> The juvenile court in each county as herein provided shall have jurisdiction of:

> . . . .

> (3) Any juvenile (a) who is . . . in a situation . . . dangerous to life or limb or injurious to the health or morals of such juvenile . . . .

The record is rather sketchy as to the details of the molestation other than the mother's admission. However, a document entitled "Court Report" which is part of the certified transcript from the juvenile court, the county court for Custer

County, and which is included within the bill of exceptions from the district court recites in part as follows:

[The child] has been attending counseling in North Platte with Linda Perry of Mental Health Specialists. According to Ms. Perry [the child] has been consistent in attendance with the counseling and meets with her on an every other week basis. In counseling [the child] has dealt with issues of her molestation and is in a survivor stance with that issue. She is currently working on family issues. Ms. Perry feels [the child] has made great progress in personal growth issues. However, her mother . . . has not attended counseling regularly. She has not been at a session with [the child] since 11/1/90. At that session she brought her boyfriend and focused her attention to him instead of to [the child] and their relationship.

. . . .

[The child] was placed in foster care 4/4/90 after an investigation by the Department of Social Services revealed that [the child] was at risk of maltreatment after her mother . . . allowed [the stepfather] who has previously sexually abused [the child] back into her life. . . . [The mother] continues to be influenced and directed by the men in her life.

Section 43-1201 provides as follows:

(1) The general purposes of sections 43-1201 to 43-1225 are to:

(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise

of jurisdiction when the child and his family have a closer connection with another state . . . .

Section 43-1203 provides:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding . . .

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or is otherwise neglected;

(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (a), (b), or (c) of this section, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction . . . .

Section 43-1206 provides:

(1) A court of this state shall not exercise its jurisdiction under sections 43-1201 to 43-1225 if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

(2) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other

information supplied by the parties under section 43-1209 and shall consult the child custody registry established under section 43-1216 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

(3) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 43-1219 to 43-1222. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

Section 43-1209 provides:

(1) Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether:

. . . .

(b) He has information of any custody proceeding concerning the child pending in a court of this or any other state; and

. . . .

(3) Each party has a continuing duty to inform the court of any custody proceeding concerning the child in

this or any other state of which he obtained information during this proceeding.

Section 43-1214 provides in part:

(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 43-1201 to 43-1225 or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

Pertinent to the record in this case, as alleged by the mother in her brief, is the following portion of the PKPA, 28 U.S.C. § 1738A:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the laws of such State; and

(2) one of the following conditions is met:

. . . .

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

In her first assignment of error, the mother argues that the juvenile court erred as a matter of law in finding that the provisions of the Nebraska Child Custody Jurisdiction Act did not apply to matters arising under § 43-247(3). In addition, the mother contends that the act deprives the court of jurisdiction. These complaints were raised in substance on March 5, 1991, when the mother filed her motion to dismiss for want of subject matter jurisdiction, and on April 1, 1991, in her "motion" for a stay of proceedings. These motions were overruled by the juvenile court. The mother is thus, in fact, attempting to appeal

the denial of her motion to dismiss and motion for stay.

The first issue to be determined is whether those orders of the juvenile court were appealable orders.

The plan which led to the motions which were overruled was prepared by DSS at the request of the court and stated and concluded as follows:

F. Assessment:

Since the last court review [the mother] has quit her job and moved to the Cozad, Lexington area with her boyfriend. She has not cooperated with counseling to address the safety issues needed in her home to protect [the child].

Due to the instability of [the mother's] relationships and the fear expressed by [the child] of the men in her mother's life, the Nebraska Department of Social Services cannot be assured of [the child's] safety with her mother.

G. Recommendations to the Court:

It is recommended that [the child] remain in the custody of the Nebraska Department of Social Services and that she remain in foster care. Reunification efforts with the mother . . . have been unsuccessful. However, [the child's] father . . . has exhibited increased interest in [the child's] care and well being and has expressed a desire for [the child] to live with him. Due to this interest we recommend that the Nebraska Department of Social Services initiate an Interstate Compact request for a home study of the [father's] home to determine if the father's home could be considered for future placement.

In *Larsen v. Ralston Bank*, 236 Neb. 880, 883, 464 N.W.2d 329, 332 (1991), this court said:

In the absence of a judgment or order finally disposing of a case, the Supreme Court has no authority or jurisdiction to act, and in the absence of such judgment or order the appeal will be dismissed. [Citation omitted.]

To be final, an order must dispose of the whole merits of the case and must leave nothing for the further consideration of the court. Thus, when no further action of the court is required to dispose of a pending cause, the order is final. However, if the cause is retained for further

action, the order is interlocutory. [Citation omitted.] Furthermore, if a party's substantial rights are not determined by the court's order and the cause is retained for further action, the order is not final. [Citations omitted.]

In addition to the citation from *Larsen v. Ralston Bank, supra*, we are aware of the following language from *Gruenewald v. Waara*, 229 Neb. 619, 621, 428 N.W.2d 210, 213 (1988):

While it is clear that an order sustaining the plea [in bar] would have had the effect of precluding the maintenance of Waara and Minkoff's suit [citation omitted], and therefore would have been final, the order overruling the plea is not final, for the presently unsuccessful parties may ultimately prevail following a trial on the merits.

We agree that here the mother may eventually prevail in this matter and it is conceivable that the court would ultimately return custody of the child to her; however, we believe that it would be highly unlikely in view of the approved plan which is being pursued. It is quite obvious that DSS and the juvenile court have given up on the mother, and as time passes with the forced separation of mother and child, any familial relationship will be destroyed.

Although the situation here is "the other side of the coin" from that in *Carpenter v. Carpenter*, 326 Pa. Super. 570, 474 A.2d 1124 (1984), the reasoning in the latter case is helpful. That case involved the UCCJA in that temporary custody of a child had been placed with the maternal grandmother by a Massachusetts court. The father and paternal grandparents petitioned a Pennsylvania court for custody, and that court, unaware of the Massachusetts custody order, issued an order granting temporary custody to the father and paternal grandparents. The maternal grandmother and mother then petitioned the Pennsylvania court for a stay of the custody proceedings there because of the exercise of jurisdiction by Massachusetts. The Pennsylvania trial court granted the stay and vacated its earlier order granting temporary custody to the father and grandparents. The father and grandparents appealed. On appeal, the order granting the stay was affirmed.

However, a footnote in the opinion of the appellate court explains why that court accepted jurisdiction:

> Although "orders staying proceedings to await the termination of related proceedings in another court are generally interlocutory in nature, [this] should not be viewed as a blanket rule without exception to be applied in all cases involving stay orders. Whether or not a stay order should be considered final for appeal purposes depends to a large extent upon the practical effect and impact the stay order might have on the relief requested by the litigants. If the effect of the stay order is tantamount to a dismissal of the cause of action or amounts to a permanent denial of relief requested, the party aggrieved should undoubtedly be afforded the opportunity to appeal on the basis that such stay order is a final disposition of some, if not all, of the rights involved." [Citation omitted.] Here, appellants request that we order the trial court to exercise its jurisdiction to decide custody. Under the Uniform Child Custody Jurisdiction Act . . . the courts of this Commonwealth must recognize and enforce out-of-state custody decrees. . . . By its order of May 20, vacating its earlier award of temporary custody and staying the custody proceeding before it, the trial court effectively precluded appellants from litigating the case in Pennsylvania. Its order thus has the same effect as a dismissal and is therefore a final appealable order.

*Carpenter*, 474 A.2d at 1126-27 n.2.

Where, as here, the juvenile court by its order refuses to stay proceedings under the Nebraska Child Custody Jurisdiction Act, § 43-1201 et seq., and pursues a plan which calls for the eventual custody of the child with the father, that order is tantamount to a permanent denial of the mother's parental rights in the child and therefore is appealable, and we do have jurisdiction to address the merits of the case.

We agree with the mother that the Nebraska Child Custody Jurisdiction Act gives jurisdiction to the juvenile court over dependency proceedings. Section 43-1202(3)(b) incorporates § 43-247(3) into the Nebraska Child Custody Jurisdiction Act by stating that the term "custody proceeding" shall include

"[p]roceedings in a juvenile court in which a person under the age of eighteen years is alleged to be a child as described in subdivision (3) of section 43-247." See, also, *Matter of Pima County Juvenile Action*, 147 Ariz. 527, 711 P.2d 1200 (1985), *modified, Matter of Appeal in Pima County*, 147 Ariz. 584, 712 P.2d 431 (1986) (under the UCCJA, a trial court can assume jurisdiction of a dependency proceeding). Accord *T. L. v. State, Dept. of Health & Etc.*, 392 So. 2d 288 (Fla. App. 1980).

The first inquiry to be made is whether a juvenile court can acquire jurisdiction under § 43-1203, which contains the general jurisdiction provisions of the Nebraska Child Custody Jurisdiction Act and lists four separate bases of jurisdiction.

The first jurisdictional basis applies if this state is the home state of the child or has been the home state within the 6 months prior to the commencement of the action. § 43-1203(1)(a). The term "home state" is defined as the state in which the child lived with his or her parent or parents, or a person acting as a parent, immediately preceding the time involved, for at least 6 consecutive months. § 43-1202(5).

Since the record shows that the child is now and had been a resident of the State of Nebraska for at least 6 months prior to the filing of the petition, the juvenile court could assume jurisdiction over the case under this provision.

The second jurisdictional basis is found under § 43-1203(1)(b), which states that a court can assume jurisdiction in the best interests of the child because (1) the child and his or her parents, or the child and at least one contestant, have a significant connection with this state and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. The juvenile court could also assume jurisdiction under this provision, since mother and child both reside in this state and there is substantial evidence available in Nebraska concerning the child. The record shows that the mother did not take proper care of her daughter and that as a result the child was exposed to sexual abuse.

Section 43-1203(1)(c) contains the third jurisdictional provision, also referred to as the "emergency jurisdiction provision." This provision permits the juvenile court to assume

jurisdiction of a child who is physically present in this state and (1) the child has been abandoned or (2) it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or is otherwise neglected. Physical presence in this state of the child is alone sufficient to confer jurisdiction on a court to make a child custody determination under § 43-1203(1)(c). § 43-1203(2).

The emergency jurisdiction provisions of the UCCJA retain and reaffirm parens patriae jurisdiction, which a court must assume when a child is in a situation requiring immediate protection. This concept signifies a philosophy whereby the State has a responsibility to act as a "superparent." *Silva v. Tucker*, 500 A.2d 947 (R.I. 1985).

The juvenile court can assume jurisdiction under this provision, since the child is physically present in this state and was sexually abused by her stepfather. The emergency situation is ongoing, since the case report shows that the mother continues to be influenced and directed by the men in her life and does not attend the child's counseling sessions. The record also shows that due to the instability of the mother's relationships and the fear expressed by the child of the men in her mother's life, DSS cannot be assured of the child's safety if she is returned to her mother.

The fourth jurisdictional provision, listed in § 43-1203(1)(d), which applies when no other state would have jurisdiction or when another state has declined to exercise jurisdiction, is not applicable in this case.

As we conclude that the juvenile court can assume jurisdiction under § 43-1203(1)(a), (b), or (c), it is necessary to decide next whether the court can exercise this jurisdiction by modifying an out-of-state custody decree.

Even if jurisdiction exists under § 43-1203, a Nebraska court may be precluded from modifying a custody decree. Modification could be held improper under § 43-1214, which states in part:

> (1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court

which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 43-1201 to 43-1225 or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

According to this section, the Nebraska trial court must inquire whether Iowa still has jurisdiction under its equivalent to § 43-1203(1), which is Iowa Code Ann. § 598A.3(1) (West 1981). The Iowa court cannot assume jurisdiction under subsection 1a because Iowa is no longer the child's home state. The Iowa court does not have jurisdiction under subsection 1c, either, because the child is not physically present in Iowa. Nor does the Iowa court have jurisdiction under subsection 1d because the Nebraska juvenile court properly asserted jurisdiction over the case. The only remaining provision is therefore 1b, which applies if the child and at least one of the parents (or contestants) have a significant connection with Iowa and there is substantial evidence available in that state concerning the child.

A case with a slightly similar fact pattern is *Range v. Range*, 232 Neb. 410, 440 N.W.2d 691 (1989), where this court held that a Nebraska court had jurisdiction over a custody modification proceeding instigated by the father, even though the child had moved with the custodial mother to Georgia, which had become the child's home state. The mother argued that the State of Georgia had jurisdiction as the home state of the child. This court disagreed and stated:

" 'Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.' "

(Emphasis omitted.) *Id.* at 414, 440 N.W.2d at 694, quoting *Kumar v. Superior Court of Santa Clara Cty.*, 32 Cal. 3d 689, 652 P.2d 1003, 186 Cal. Rptr. 772 (1982), quoting Brigitte M.

Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam. L.Q. 203 (1981). See, also, *G.S. v. Ewing*, 786 P.2d 65 (Okla. 1990) (wherein the Oklahoma Supreme Court held that a state court which renders the original divorce decree retains continuing jurisdiction to modify the custody decree if one parent resides in that state and significant parental contact was maintained). The notion of continuing jurisdiction is in accord with the purpose of the UCCJA to achieve greater stability of custody arrangements and to avoid forum shopping. See *State in Interest of D.S.K.*, 792 P.2d 118 (Utah 1990).

The notion of continuing jurisdiction, adopted in *Range, supra*, would indicate that the Nebraska court has to defer its jurisdiction to the Iowa court, since the child's father is still a resident of that state and there is significant contact between the father and the child. However, the juvenile court is entitled to exercise temporary jurisdiction over the child under the emergency provision of the Nebraska Child Custody Jurisdiction Act. "Where a grave emergency exists affecting the immediate needs and welfare of the child, a . . . court may enter appropriate orders for the protection of the child present in [that state] even if its orders contravene those of a sister state that still retains jurisdiction over custody." *State in Interest of D.S.K.*, 792 P.2d at 127.

With respect to the scope of jurisdiction a court should exercise under the emergency provision, Professor Bodenheimer has made the following comment:

> [T]his special power to take protective measures does not encompass jurisdiction to make permanent custody determinations or to modify the custody decree of a court with continuing jurisdiction. Emergency jurisdiction confers authority to make temporary orders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the Act.

Bodenheimer, *supra* at 225-26. The court in *State in Interest of D.S.K.*, 792 P.2d at 127, reworded this theory as follows:

> Thus, an assumption of emergency jurisdiction is an assumption of temporary jurisdiction only; it does not

confer upon the state the authority to make a permanent custody disposition. . . .

Further, a temporary order should continue only as long as necessary to contact the decree state and determine which court is the correct forum to handle the emergency abuse or neglect claim and to litigate the modification issue.

The notion of temporary jurisdiction was also recognized in *Matter of Pima County Juvenile Action*, 147 Ariz. 527, 711 P.2d 1200 (1985), *modified, Matter of Appeal in Pima County*, 147 Ariz. 584, 712 P.2d 431 (1986), a case very similar to the one before us. The children in that case were placed in the custody of their guardians, residents of Arkansas, after their parents had died. The maternal grandfather filed a dependency petition in Arizona based on physical and sexual abuse. The juvenile court entered temporary orders making the children temporary wards of the court, awarding temporary legal custody to the Department of Economic Security, and granting temporary physical custody to the grandfather. The guardians appealed, claiming that the court did not have jurisdiction under the UCCJA. The appellate court held that the juvenile court had properly assumed emergency jurisdiction. However, the court noted that Arkansas had retained continuing jurisdiction through the guardian proceeding and that the record did not support a finding that Arkansas had declined jurisdiction. Therefore, the Arizona court had jurisdiction to grant temporary orders only. See, also, *In re Custody of Cox*, 536 N.E.2d 520 (Ind. App. 1989) (father filed petition in Indiana seeking emergency modification of custody decree rendered by Kentucky court; the appellate court upheld a temporary order of custody but required the trial court to refrain from modifying the decree, since Kentucky had continuing jurisdiction); *Garza v. Harney*, 726 S.W.2d 198 (Tex. App. 1987) (Texas trial court had jurisdiction to enter a temporary order on emergency grounds for a child who was subject to custody determination in a Mexican divorce proceeding, but could not take any action that would change the orders of the Mexican court).

In the case before us, the juvenile court, unaware of the Iowa

divorce decree, initially assumed original jurisdiction under § 43-247(3) only. It was not until March 5, 1991, that the mother informed the court of a prior out-of-state custody determination. Since the child was assaulted in Custer County, the juvenile court had temporary emergency jurisdiction under § 43-1203(1)(c) which would include a temporary custody placement of the child with a responsible person. However, we determine that the Iowa court retains continuing jurisdiction to render a final custody determination. We therefore order the juvenile court to refrain from modifying the Iowa divorce decree and to communicate with the Iowa court to determine the appropriate forum for this case. The Nebraska juvenile court will have permanent jurisdiction over the case if the State of Iowa declines jurisdiction or fails to take appropriate action. When another state has entered a child custody decree and one of the parents remains a resident of that state, generally the courts of this state are without jurisdiction to make a permanent change of custody unless the first state affirmatively declines jurisdiction or fails to take appropriate action. See §§ 43-1203(1)(d) and 43-1214(1).

The mother next contends that the State did not comply with the mandatory pleading requirements of § 43-1209 and argues that the State should have informed the court of the child's prior addresses and the Iowa custody decree. The mother claims that absence of these pleadings requires dismissal of the case.

This court recognizes the general rule that if a party fails to file the information required by § 43-1209, the court cannot exercise jurisdiction in conformance with the act. See, *Walt v. Walt*, 574 So. 2d 205 (Fla. App. 1991); *Perez v. Perez*, 519 So. 2d 1104 (Fla. App. 1988); *Mouzon v. Mouzon*, 458 So. 2d 381 (Fla. App. 1984); *Pasqualone v. Pasqualone*, 63 Ohio St. 2d 96, 406 N.E.2d 1121 (1980). However, the trial court's failure to require this information to be filed does not always result in a deprivation of jurisdiction. Some courts have distinguished intrastate dependency proceedings from interstate custody disputes and have held that a failure to satisfy the pleading requirements in a dependency proceeding constitutes a harmless error. See, *Walt, supra*; *In re Palmer*, 12 Ohio St. 3d

194, 465 N.E.2d 1312 (1984), *cert. denied, Pihlblad v. Starke County Welfare Department*, 469 U.S. 1162, 105 S. Ct. 918, 83 L. Ed. 2d 930 (1985). The court in *In re Palmer*, 12 Ohio St. 3d at 197, 465 N.E.2d at 1315, defined the distinction as follows:

> Under the present circumstances a rigid interpretation of [the pleading requirements] would only serve to prolong the agony of the children herein. Moreover, in instances when a public agency is a party, rigid adherence to [the pleading requirements] would open the door to the contingency where a child, inarticulate, injured, neglected and found by the roadside, could not be provided for because the public agency could not ascertain the information . . . with regard to the places where the child had lived within the past five years, and the names and present addresses of those persons with whom the child had lived during that period.
>
> The prefatory note to the Uniform Child Custody Jurisdiction Act . . . makes it quite clear that the Act is designed to prevent interfamilial custody tug of wars between differing jurisdictions, not create them. As we noted in *Pasqualone*, the mandatory jurisdictional requirement applies to "a parent" bringing an action.

This court finds that failure to comply with the pleading requirements of § 43-1209 in a dependency proceeding may constitute harmless error, which can be cured by the juvenile court. In addition, in this case a remand on such a technical violation would serve no useful purpose because the information necessary to determine subject matter jurisdiction, i.e., the sexual assault which occurred in Nebraska, had been provided. The facts furnished ample basis for the juvenile court to assume jurisdiction under the emergency provision of § 43-1203. See, also, *In re Marriage of Bolson*, 394 N.W.2d 361 (Iowa 1986).

In her next assignment of error, the mother argues that the juvenile court should have granted her request for stay and should have communicated with the Iowa court that rendered the divorce decree, based on § 43-1206(3).

The mother refers to the cases *Matter of Pima County Juvenile Action*, 147 Ariz. 527, 711 P.2d 1200 (1985), *modified,*

*Matter of Appeal in Pima County*, 147 Ariz. 584, 712 P.2d 431 (1986), and *Zappitello v. Moses*, 458 N.W.2d 784 (S.D. 1990), for the proposition that refusal to inquire with the foreign court divests the court of subject matter jurisdiction. These cases, however, do not stand for that proposition. The court in *Zappitello*, 458 N.W.2d at 787, stated only that "a court has an affirmative duty to question its jurisdiction." The court in *Matter of Pima County Juvenile Action, supra*, found only that once a court is apprised of a pending out-of-state proceeding, it has to communicate with the foreign court, inform the latter of the pending instate proceeding, and determine with that court which is the more appropriate forum for the case.

Section 43-1206(3) applies only when a custody proceeding is pending in another state. Iowa Code Ann. § 598.21(8) (West 1981) authorizes the divorce court to subsequently modify custody orders. Since the Iowa divorce court has the authority under Iowa law to modify the decree and therefore would be considered to have continuing jurisdiction over the case, that proceeding would be considered as pending for purposes of § 43-1206(3). We direct that the juvenile court must stay this proceeding and communicate with the court in Iowa to decide which court is the more appropriate forum in which to proceed.

Next, the mother argues that the juvenile court failed to determine whether it had jurisdiction under the Nebraska Child Custody Jurisdiction Act, which in turn deprived the court of its jurisdiction over the case. The mother bases this contention on *Zappitello, supra*, and *Matter of Pima County Juvenile Action, supra*. Again, these cited cases do not stand for that proposition. The juvenile court did err in failing to determine whether it had jurisdiction under the Nebraska Child Custody Jurisdiction Act. However, this error does not deprive the court of emergency jurisdiction.

Finally, the mother argues that the juvenile court erred in finding that the PKPA, 28 U.S.C. § 1738A, was not applicable to the case. In addition, the mother argues that Iowa retained jurisdiction under the act. We agree with the juvenile court that the PKPA does not apply to dependency proceedings. The act, unlike the Nebraska Child Custody Jurisdiction Act, does not incorporate child neglect and dependency proceedings. In

addition, the act stresses the importance of preventing "child snatching" and should not be applied in a case where the State is not an arbiter but a party to the action. See *State ex rel. Dept. of Hum. Serv. v. Avinger*, 104 N.M. 255, 720 P.2d 290 (1986), *aff'g* 104 N.M. 355, 721 P.2d 781 (1985). The notion that the act does not apply to dependency proceedings can also be inferred from language of the act. The act provides that the court which granted the initial custody decree retains continuing jurisdiction if that court has jurisdiction under state law and the state remains the residence of the child or of any *contestant*. 28 U.S.C. § 1738A(c) and (d). According to 28 U.S.C. § 1738A(b)(2) of the PKPA, a "contestant" is a person, including a parent, who claims a right to custody or visitation of a child, but the State of Nebraska, acting in the role of parens patriae, does not fit within that definition. This assignment of error does not have merit.

The judgment of the district court is reversed, and the cause is remanded with directions to remand to the county court, which shall comply with the requirements of the Nebraska Child Custody Jurisdiction Act before proceeding further with this matter.

REVERSED AND REMANDED WITH DIRECTIONS.