Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/26/2018 09:13 AM CDT

Jennifer T., appellant, v.
Lindsay P., appellee.

___ N.W.2d ___

Filed February 2, 2018.    No. S-17-107.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Parent and Child: Standing: Words and Phrases.** In loco parentis is a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural parent when the evidence shows that the nonparent's exercise of such rights is in the child's best interests.

3. **Parent and Child.** In order to stand in loco parentis, one must assume all obligations incident to the parental relationship.

4. **Parent and Child: Parental Rights.** A person in loco parentis generally holds the same rights as a lawful parent. However, in loco parentis status does not, by itself, eclipse the superior nature of the parental preference accorded to biological or adoptive parentage.

5. **Actions: Parent and Child: Standing.** In the face of a natural parent's objection, in loco parentis gives standing to litigate whether the child's best interests are served by maintaining the in loco parentis relationship.

6. **Parent and Child.** In loco parentis status is, unlike biological and adoptive parentage, transitory.

7. **Actions: Parent and Child.** A litigant cannot seek a declaration of permanent parental status under the in loco parentis doctrine.

8. **Parent and Child.** Once the person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis.

9. ____. Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby.

10. **Courts: Jurisdiction: Adoption: Minors.** An order of consent under Neb. Rev. Stat. § 43-104(1)(b) (Reissue 2016) granted by the district

court does nothing more than permit the county court, as the tribunal having exclusive original jurisdiction over adoption matters, to entertain such proceedings.

11. **Adoption.** An order of consent under Neb. Rev. Stat. § 43-104(1)(b) (Reissue 2016) is not a determination of the child's best interests or any other issue pertaining to adoption.

12. **Courts: Jurisdiction: Adoption.** The consent under Neb. Rev. Stat. § 43-104(1)(b) (Reissue 2016) can be understood as a limited deferral to the adoption court of the first court's jurisdictional priority.

13. **Courts: Jurisdiction.** Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, the court whose power is first invoked by proper proceedings acquires jurisdiction to the exclusion of all tribunals to adjudicate the rights of the parties.

14. ____: ____. Two courts cannot possess at the same time the power to make a final determination of the same controversy between the same parties.

15. ____: ____. A court with jurisdictional priority can choose to relinquish it.

16. ____: ____. Jurisdictional priority is a matter of judicial administration and comity. It is not to protect the rights of the parties but the rights of the courts to coordinate jurisdiction to avoid conflicts, confusion, and delay in the administration of justice.

17. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken.

18. **Final Orders: Appeal and Error.** Having a substantial effect on a substantial right depends most fundamentally on whether the right could otherwise effectively be vindicated through an appeal from the final judgment.

19. ____: ____. Generally, an immediate appeal from an order is justified only if the right affected by the order would be significantly undermined or irrevocably lost by waiting to challenge the order in an appeal from the final judgment.

20. **Adoption.** Orders of consent under Neb. Rev. Stat. § 43-104(1)(b) (Reissue 2016) do not affect a substantial right, because they do not resolve the issue of adoption.

21. **Injunction: Final Orders.** Orders staying proceedings to await the termination of related proceedings in another court are usually not final.

22. ____: ____. The finality of an order granting a stay depends upon the practical effect and impact the stay order might have on the relief requested by the litigants.

23. **Injunction: Dismissal and Nonsuit.** A substantial right is affected by an order granting a stay if its effect is tantamount to a dismissal or to a permanent denial of the requested relief.
24. **Final Orders: Appeal and Error.** It is the effect on the appellant's rights, not another's, that justifies the immediate review of an interlocutory order.
25. **Dismissal and Nonsuit: Moot Question.** The mere possibility of mootness is not the functional equivalent of a dismissal or a permanent denial of the requested relief.
26. **Injunction: Dismissal and Nonsuit.** A temporary stay that merely preserves the status quo pending a further order is not an order that amounts to a dismissal of the action or that permanently denies relief to a party.
27. **Courts: Jurisdiction.** A litigant's substantial rights are not affected by the mere fact that one court has determined that the interests of judicial administration are best served by temporarily deferring jurisdictional priority to another court of this state.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Appeal dismissed.

Lindsay Belmont, of Koenig Dunne, P.C., L.L.O., for appellant.

Desirae M. Solomon for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

## INTRODUCTION

The former partner of a biological mother who conceived via in vitro fertilization brought a custody action in district court based on her alleged in loco parentis status to the child. The biological mother and her wife subsequently filed a petition in county court for stepparent adoption. The district court consented to the adoption and stayed the custody action pending the resolution of the adoption petition. We must determine whether the consent to adoption or the order staying the custody action presents a final order.

## BACKGROUND

Lindsay P. and Jennifer T. were in a committed relationship from 2001 to 2012. During the course of that relationship, Lindsay conceived Chase T. by artificial insemination through an anonymous donor. Chase was born in 2010, and Jennifer stayed home to care for him while Lindsay worked outside the home.

Lindsay and Jennifer separated in 2012, but they continued to coparent Chase. They agreed to a parenting schedule under which Lindsay had Chase on Mondays and Tuesdays, Jennifer had Chase on Wednesdays and Thursdays, and they alternated weekend parenting time. Lindsay married Jessica P. in 2015.

On August 12, 2015, Jennifer filed a complaint in the district court for Douglas County for initial determination of custody and to establish support. The complaint, as amended, alleged that Jennifer has stood in loco parentis for Chase since his birth, assuming all rights, responsibilities, and obligations incident to a lawful parental relationship. Jennifer sought sole legal and physical custody of Chase, with reasonable parenting time to be awarded to Lindsay. Jennifer also sought child support and an order requiring both parties to share in medical, educational, and other expenses relating to Chase's care.

Approximately 1 month after Jennifer's custody action was filed, Lindsay and Jessica filed a petition for stepparent adoption in the county court for Douglas County. Lindsay filed a motion for the district court to consent to the stepparent adoption, under Neb. Rev. Stat. § 43-104 (Reissue 2016).

Jennifer filed a motion in county court to intervene in the adoption proceeding and to stay the adoption proceeding pending the custody action. At the same time, Jennifer filed a motion in the district court seeking to enjoin Lindsay from proceeding in the county court adoption matter.

Lindsay moved in district court for summary judgment or dismissal of the custody action. Rather than ruling on

Lindsay's motion, the district court stayed the custody action pending resolution of the adoption proceeding.

Subsequently, in county court, Jennifer was denied the right to intervene. The county court also overruled her motion to stay the adoption proceedings. Jennifer appealed the county court's orders, and we reversed.

We explained in *In re Adoption of Chase T.*[1] that the county court lacked jurisdiction to issue its order dismissing Jennifer's complaint to intervene and overruling her motion to stay the adoption proceeding, because the county court had failed to obtain the district court's consent to the adoption. The county court's order was vacated.[2]

While the appeal in *In re Adoption of Chase T.* was pending, Jennifer moved in district court for a release of its stay. She alleged that per the district court's instructions, she had requested to intervene in the adoption proceedings, but that the request was denied for lack of standing. She further alleged that her "in loco parentis parental relationship must be established first, before she has a right to intervene in the adoption action." Jennifer also asserted that the district court had an obligation to retain its jurisdictional priority over the county court, because the custody action was filed first. The district court sustained the request to release the stay.

After our opinion in *In re Adoption of Chase T.*, Lindsay renewed her request for the district court's consent to the adoption.

Jessica eventually filed a motion to intervene in the custody action. Lindsay then filed a motion asking the court to reissue its stay of the custody action—after ruling on her motion for consent to adoption and Jessica's motion to intervene.

Lindsay argued that a stay was warranted, because a decision in the adoption proceeding was required before the court

---

[1] *In re Adoption of Chase T.*, 295 Neb. 390, 888 N.W.2d 507 (2016).

[2] *Id.*

could make "an informed decision regarding all issues and litigants." She claimed that a stay would avoid unneeded litigation and expense. At a hearing on the motions for consent to adoption, intervention, and stay, Lindsay elaborated that she thought the adoption proceeding should be resolved first in order to protect Chase's right to be adopted, as well as to establish Jessica's status vis-a-vis any visitation rights that might ultimately be ordered in the custody action.

Jennifer objected to the motions filed by Lindsay and Jessica. On the motion to intervene, Jennifer argued that any in loco parentis rights pertaining to Jessica were irrelevant to her own in loco parentis claim to custody. As for the motions for consent and stay, Jennifer asserted that the district court had jurisdictional priority over the county court. She also argued that a determination of her in loco parentis rights must be made by the district court before the adoption proceeds, because the county court, through its vacated order, had determined that she lacked standing. Finally, she asserted that a stay would cause irreparable harm to her in loco parentis right to parent Chase.

On January 27, 2017, the court overruled the motion by Jessica to intervene in the custody action, but it consented to the adoption proceeding. In the same order, the district court granted the motion to stay the custody action "until further order of the Court." Jennifer appeals the January 27 order.

## ASSIGNMENTS OF ERROR

Jennifer assigns that the district court erred in (1) granting its consent to the adoption to proceed in county court and (2) staying the custody proceedings in the district court.

## STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[3]

---

[3] *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011).

## ANALYSIS

Jessica's underlying custody action in this case derives from common law.[4] We held in *Latham v. Schwerdtfeger*[5] that the former partner to the biological mother of a child conceived via artificial insemination had standing under the doctrine of in loco parentis to seek custody and court-ordered visitation of the child. We recognized a "'wide spectrum of arrangements [have filled] the role of the traditional nuclear family'" and that a biological parent who "'voluntarily created and actively fostered'" a former partner to assume the status of a parent cannot erase that relationship after the parties' separation "'simply because . . . she regretted having done so.'"[6]

[2] In loco parentis is a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural parent when the evidence shows that the nonparent's exercise of such rights is in the child's best interests.[7] This standing doctrine protects the rights of the natural parent from intrusions by third parties except when those third parties have a stature like that of a parent.[8]

[3-5] In order to stand in loco parentis, one must assume all obligations incident to the parental relationship.[9] In turn, a person in loco parentis generally holds the same rights as

---

[4] See *Latham v. Schwerdtfeger*, 282 Neb. 121, 802 N.W.2d 66 (2011), *disapproved on other grounds, Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016).

[5] *Id.*

[6] *Id.* at 130, 134, 802 N.W.2d at 74, 76.

[7] See *Latham v. Schwerdtfeger, supra* note 4.

[8] See *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013).

[9] See, *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002), *disapproved on other grounds, In re Interest of Enyce J.*, 291 Neb. 965, 870 N.W.2d 413 (2015); *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000), *disapproved on other grounds, Windham v. Griffin, supra* note 4.

a lawful parent.[10] However, in loco parentis status does not, by itself, eclipse the superior nature of the parental preference accorded to biological or adoptive parentage.[11] Rather, in the face of a natural parent's objection, in loco parentis gives standing to litigate whether the child's best interests are served by maintaining the in loco parentis relationship.[12]

[6-9] The parental preference accorded to biological or adoptive parentage is based in part on the fact that in loco parentis status is, unlike biological and adoptive parentage, "transitory."[13] We have held that a litigant cannot seek a declaration of permanent parental status under the in loco parentis doctrine.[14] Once the person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis.[15] Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby.[16]

### DISTRICT COURT'S CONSENT
### WAS NOT FINAL ORDER

The district court in this case has not yet determined whether Jennifer has a right to custody and visitation by virtue of her alleged in loco parentis relationship with Chase. Instead, the court gave its statutory consent to the adoption proceedings and stayed the action. Under § 43-104(1)(b), the county court must have the consent of any other court with jurisdiction over the child's custody before it has jurisdiction to entertain the merits of any issue in the adoption proceeding.[17]

---

[10] See *Windham v. Griffin, supra* note 4.

[11] See *id.*

[12] See *In re Guardianship of Brydon P., supra* note 8.

[13] *Id.* at 674, 838 N.W.2d at 272. See, also, *Windham v. Griffin, supra* note 4.

[14] *In re Guardianship of Brydon P., supra* note 8.

[15] *In re Interest of Destiny S., supra* note 9.

[16] *Id.*

[17] See *In re Adoption of Chase T., supra* note 1.

[10-12] The consent granted by the district court does nothing more than permit the county court, as the tribunal having exclusive original jurisdiction over adoption matters, to entertain such proceedings.[18] Such consent is not a determination of the child's best interests or any other issue pertaining to adoption.[19] Indeed, because county courts have exclusive jurisdiction over adoption, we have said that a nonadoption court lacks authority to decide such matters.[20] The consent under § 43-104(1)(b) can be understood as a limited deferral to the adoption court of the first court's jurisdictional priority.

[13,14] Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, the court whose power is first invoked by proper proceedings acquires jurisdiction to the exclusion of all tribunals to adjudicate the rights of the parties.[21] Logically, two courts cannot possess at the same time the power to make a final determination of the same controversy between the same parties.[22]

The doctrine of jurisdictional priority usually applies to two pending cases only when they involve the same whole issue.[23] In other words, the two actions must be materially the same, involving substantially the same subject matter and the same parties.[24] But this is sometimes extended to situations where each action composes part of the whole issue,[25] and we have

---

[18] See *Klein v. Klein*, 230 Neb. 385, 431 N.W.2d 646 (1988).

[19] See *Smith v. Smith*, 242 Neb. 812, 497 N.W.2d 44 (1993).

[20] *Id.*

[21] See, *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013); *State ex rel. Consortium for Economic & Community Dev. for Hough Ward 7 v. Russo*, 2017 Ohio 8133, 151 Ohio St. 3d 129, 86 N.E.3d 327 (2017).

[22] See *id.*

[23] *Charleen J. v. Blake O.*, 289 Neb. 454, 855 N.W.2d 587 (2014).

[24] See *id.*

[25] See *State ex rel. Consortium For Economic & Community Dev. For Hough Ward 7 v. McMonagle*, 2016 Ohio 4704, 68 N.E.3d 125 (2016).

applied this broader concept of jurisdictional priority to matters of continuing jurisdiction of child custody.[26] We have indicated that the first court with jurisdiction over a child's custody has priority over a subsequent court with jurisdiction over the child's custody, even if the subject matter of the proceedings is not otherwise the same.[27]

[15,16] A court with jurisdictional priority can choose to relinquish it.[28] In *Charleen J. v. Blake O.*,[29] we explained that we have sometimes referred to the second court as lacking jurisdiction, but this is wrong. "We mean that a subsequent court that decides a case already pending in another court with concurrent subject matter jurisdiction errs in the *exercise* of its jurisdiction."[30] Jurisdictional priority is a matter of judicial administration and comity.[31] It is not to protect the rights of the parties but the rights of the courts to coordinate jurisdiction to avoid conflicts, confusion, and delay in the administration of justice.[32] The consent provision of § 43-104(1)(b) contemplates that another court has jurisdictional priority over the custody of the child, and it contemplates that only with the other court's consent will the adoption be allowed to proceed.

Jennifer argues in this appeal that she has been prejudiced by the district court's deferral of its jurisdictional priority to the county court. She argues that without a prior determination in the custody action of her in loco parentis status, the county court may deny her standing to intervene in the adoption proceeding. Further, she argues that if the county court grants the adoption, her custody action will be moot; she assumes this

---

[26] See *Charleen J. v. Blake O., supra* note 23 (and cases cited therein).

[27] See *Charleen J. v. Blake O., supra* note 23.

[28] *Id.*

[29] See *id*.

[30] *Id*. at 463, 855 N.W.2d at 595 (emphasis in original).

[31] *Charleen J. v. Blake O., supra* note 23.

[32] See *id.*

because she assumes that three people cannot have joint legal custody over a child.

[17] But before reaching the merits of the district court's decision, we must determine if we have appellate jurisdiction. For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken.[33] The January 27, 2017, order did not dismiss the custody action or make a final determination of its merits; thus, it was not a final judgment.[34] The question, therefore, is whether we are presented with a final order.

Jennifer asserts that both aspects of the January 27, 2017, order, the consent and the stay, affected a substantial right and were made in a special proceeding. Neb. Rev. Stat. § 25-1902 (Reissue 2016) provides that "an order affecting a substantial right made in a special proceeding . . . is a final order."

We have held that a substantial right is an essential legal right, not a mere technical right.[35] It is a right of "substance." It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[36]

We have said that an order affects a substantial right if it affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. We have also said that whether the effect of an order is substantial depends upon whether it affects with finality the rights of the parties in the subject matter.[37]

[18,19] Having a substantial effect on a substantial right depends most fundamentally on whether the right could otherwise effectively be vindicated through an appeal from the

---

[33] *In re Adoption of Madysen S. et al.*, 293 Neb. 646, 879 N.W.2d 34 (2016).

[34] See *id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

final judgment.[38] Generally, an immediate appeal from an order is justified only if the right affected by the order would be significantly undermined or irrevocably lost by waiting to challenge the order in an appeal from the final judgment.[39]

In several cases, we have held that orders involving consent to adoption are not final orders, because they do not affect a substantial right.[40] In *Klein v. Klein*,[41] we held that a district court's order of consent under § 43-104(1)(b) was not a final order, even if the consent was the last act the court would take in relation to the child. In *In re Adoption of Krystal P. & Kile P.*,[42] we held that the county court's order finding that consent was not required from the then Department of Social Services was not final. Finally, in *In re Adoption of Madysen S. et al.*,[43] we held that the county court's determination that due to abandonment, a father's consent was not required, was not a final order.

[20] We concluded in these cases that the orders did not affect a substantial right, because they did not resolve the issue of adoption.[44] Despite the orders, the county court could ultimately decide to deny the petition for adoption—at which point, the complaining party's substantial rights would never be affected.[45] And, if instead the adoption were permitted, then the rights at issue could be effectively vindicated in an appeal from the final judgment of adoption.[46]

---

[38] *Id.*

[39] *Id.*

[40] See, *In re Adoption of Krystal P. & Kile P.*, 248 Neb. 907, 540 N.W.2d 312 (1995); *Klein v. Klein, supra* note 18.

[41] *Klein v. Klein, supra* note 18.

[42] *In re Adoption of Krystal P. & Kile P., supra* note 40.

[43] *In re Adoption of Madysen S. et al., supra* note 33.

[44] See *Klein v. Klein, supra* note 18.

[45] See *In re Adoption of Madysen S. et al., supra* note 33.

[46] See *id.*

We see no reason to diverge from this precedent here. It is true that in these cases concerning the immediate appealability of consent-related orders, the complaining parties were allowed to participate in the adoption proceedings. Indeed, in *In re Adoption of Madysen S. et al.*, we emphasized the father's continued ability to participate in the best interests hearing in the adoption proceeding when we concluded that the order of abandonment and substitute consent did not affect the father's substantial rights.

We understand that it is precisely Jennifer's ability to intervene in the adoption proceedings that she argues is one of the substantial rights at issue. But Jennifer presents no argument that the district court's consent represented a rejection of the in loco parentis status under which she claims standing in both the custody action and the adoption proceedings. Nor does she assert that a determination in the district court of her in loco parentis status would collaterally estop her claim to standing in the adoption proceeding.

While we have held under certain circumstances that an order denying intervention affects a substantial right,[47] this is not an appeal from an order denying intervention. The only effect of the consent order is that the county court has jurisdiction to consider Jennifer's motion to intervene and any other issues related to the adoption proceeding. As we have already discussed, the district court's consent is not a determination of the merits of any matter under the exclusive jurisdiction of the county court.[48]

We conclude that the district court's order of consent does not affect Jennifer's alleged right to intervene in the adoption proceedings. The order of consent was not final, and we lack jurisdiction to address its merits. We turn next to the order of stay.

---

[47] See *Streck, Inc. v. Ryan Family*, 297 Neb. 773, 901 N.W.2d 284 (2017). Compare *In re Adoption of Amea R., supra* note 3.

[48] See *Smith v. Smith, supra* note 19.

DISTRICT COURT'S STAY
WAS NOT FINAL ORDER

[21] Orders staying proceedings to await the termination of related proceedings in another court are usually not final.[49] Stays are often used to regulate the court's own proceedings or to accommodate the needs of parallel proceedings.[50] Regularly allowing immediate appeals from such orders would promote piecemeal appeals, chaos in trial procedure, and a succession of appeals in the same case to secure advisory opinion to govern further actions of the trial court.[51]

[22,23] But the finality of an order granting a stay depends """"upon the practical effect and impact the stay order might have on the relief requested by the litigants.""'"[52] We have held that a substantial right is affected by an order granting a stay if its effect is tantamount to a dismissal or to a permanent denial of the requested relief.[53]

We have recognized orders staying litigation to be final in just two instances, in *Sullivan v. Storz*[54] and in *Kremer v. Rural Community Ins. Co.*[55]

In 1952, in *Sullivan v. Storz*, we said that an order granting a continuance for approximately 2 years under the then

---

[49] *In re Interest of L.W.*, 241 Neb. 84, 486 N.W.2d 486 (1992). See, also, *Kinsey v. Colfer, Lyons*, 258 Neb. 832, 606 N.W.2d 78 (2000).

[50] 15A Charles Alan Wright et al., Federal Practice & Procedure § 3914.13 (2001).

[51] See *In re Adoption of Madysen S. et al., supra* note 33.

[52] *In re Interest of L.W., supra* note 49, 241 Neb. at 97, 486 N.W.2d at 496.

[53] See, *Shasta Linen Supply v. Applied Underwriters*, 290 Neb. 640, 861 N.W.2d 425 (2015); *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010); *In re Interest of L.W., supra* note 49.

[54] *Sullivan v. Storz*, 156 Neb. 177, 55 N.W.2d 499 (1952). See, also, *Tongue v. Lloyd*, 92 Neb. 488, 138 N.W. 738 (1912) (adjournment for more than 90 days, which was in violation of statutory maximum, worked dismissal and was therefore final).

[55] *Kremer v. Rural Community Ins. Co., supra* note 53.

Soldiers' and Sailors' Civil Relief Act affected the plaintiff's substantial right to trial without unreasonable and unnecessary delay.[56] Though we did not describe it as such, other courts reason that certain delays may be so protracted as to effectively dismiss the action and put the plaintiff out of court.[57]

More recently, in *Kremer v. Rural Community Ins. Co.*, we held that an order staying an action while the parties engaged in court-ordered arbitration was final.[58] We said that the order diminished the party's alleged entitlement to litigate in court and was tantamount to a dismissal. The substantial right affected was not the delay but the compulsion to arbitrate and the effective disposition of all the issues presented.[59] We explained that the claimed right to litigate implicated by the court's order "cannot be effectively vindicated after the party has been compelled to do that which it claims it is not required to do."[60]

[24] Jennifer relies on the concept of jurisdictional priority in asserting that the district court's stay of the custody proceeding affected a substantial right. But we have never held that a stay granted in order to defer a court's jurisdictional priority to another court presents a final order. Jurisdictional priority is not about the rights of parties but the rights of the courts.[61] And it is the effect on the appellant's rights, not

---

[56] See *Sullivan v. Storz, supra* note 54. See, also, *Carmicheal v. Rollins*, 280 Neb. 59, 783 N.W.2d 763 (2010).

[57] See, *King v. Cessna Aircraft Co.*, 505 F.3d 1160 (11th Cir. 2007); *Dependable Highway Exp. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007); *767 Third Ave. v. Consulate General of Yugoslavia*, 218 F.3d 152 (2d Cir. 2000); *American Mfrs. Mut. Ins. v. Edward D. Stone, Jr.*, 743 F.2d 1519 (11th Cir. 1984).

[58] *Kremer v. Rural Community Ins. Co., supra* note 53.

[59] See *id.*

[60] *Id.* at 602, 788 N.W.2d at 549.

[61] See *Charleen J. v. Blake O., supra* note 23.

another's, that justifies the immediate review of an interlocutory order.[62]

There is some federal authority holding that a stay is appealable if its practical effect is to permanently surrender federal jurisdiction over the suit to a state court's judgment by virtue of the res judicata effect of the other judgment precluding any further substantive decision in the federal court.[63] We can find no similar authority pertaining to the surrender of jurisdiction from one court to another within the same state.

[25] Regardless, the custody and the adoption proceedings concerning Chase do not have an identity of issues that would unavoidably result in precluding further substantive decisions by the district court. As Jennifer describes her argument, the custody action would be moot only if the county court approved the stepparent adoption. She concedes that her custody action would be unaffected if the county court does not grant the adoption. Without deciding the merits of Jennifer's underlying mootness assumption, we hold that the mere possibility of mootness is not the functional equivalent of a dismissal or a permanent denial of the requested relief.

[26] Furthermore, we note that the district court's order did not stay the custody action pending resolution of the adoption proceedings. Instead, the action was stayed merely until further order of the court. Presumably, the district court will monitor the adoption proceedings and will revisit and reassess the stay as it sees fit. We have held that a temporary stay that "merely preserves the status quo pending a further order is not

---

[62] See *In re Adoption of Amea R., supra* note 3.

[63] See, *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *In re Urohealth Systems, Inc.*, 252 F.3d 504 (1st Cir. 2001); *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165 (3d Cir. 1999); *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94 (5th Cir. 1992).

an order that amounts to a dismissal of the action or that permanently denies relief to a party."[64]

This appeal is distinguishable from *Jesse B. v. Tylee H.*[65] *Jesse B.* presented an appeal from the final judgment dismissing a habeas and declaratory judgment action challenging the legality of the proposed adoption that was pending when the action commenced. Habeas corpus is an appropriate remedy for a claim that a child is being illegally detained by the county court for adoption.[66] Despite this, the district court in *Jesse B.* stayed the habeas and declaratory judgment action until the adoption proceeding concluded. And, after the adoption was approved, the district court dismissed the habeas and declaratory judgment action on the ground that it could no longer exercise jurisdiction.

On appeal, we reversed the dismissal. We disagreed with any contention that the habeas and declaratory judgment action, inasmuch as it challenged the constitutionality of the certain adoption consent statutes, was moot. We also opined that the district court, as the first court to exercise jurisdiction over the claims in the habeas proceeding, was required to retain it to the exclusion of the county court.

But the present custody action, unlike the action in *Jesse B.*, does not challenge the legality of the county court's exercise of jurisdiction over the child to be adopted. Furthermore, *Jesse B.* did not present an immediate appeal from an interlocutory order. It is thus inapposite to the question before us of whether the stay presents a final order.

[27] We conclude that, without more, a litigant's substantial rights are not affected by the mere fact that one court has determined that the interests of judicial administration are

---

[64] *Shasta Linen Supply v. Applied Underwriters, supra* note 53, 290 Neb. at 648, 861 N.W.2d at 431.

[65] *Jesse B. v. Tylee H.*, 293 Neb. 973, 883 N.W.2d 1 (2016).

[66] See *id.*

best served by temporarily deferring jurisdictional priority to another court of this state. We hold this to be true even if the issues presented to the court with jurisdictional priority *might* be rendered moot by the time the stay is lifted.

As with the order of consent, Jennifer asserts that her right to intervene was affected by the deferral of jurisdictional priority reflected through the stay. She reasons that the absence of a prior determination by the district court of her in loco parentis status might serve as grounds for the county court to deny her motion to intervene in the adoption proceedings.

Jennifer presents no legal argument, however, that a prior determination of her in loco parentis status by the district court would be required for her to intervene in the adoption proceeding. Such an argument would run contrary to the transitory nature of in loco parentis status.

Neither does Jennifer argue that the county court lacks jurisdiction to determine her in loco parentis status when considering her motion to intervene. As stated, in loco parentis is a concept of standing. Standing ordinarily is determined in the proceeding into which the party wishes to intervene.

Finally, Jennifer does not explain how her alleged right to intervene in the adoption proceedings cannot be effectively vindicated through an appeal in that proceeding. If the right allegedly affected is the right to intervene in another proceeding, then it is more apt to consider whether it can be effectively vindicated in an appeal in that proceeding rather than in the action before us.

Because the district court's order does not determine the merits of any issue pertaining to Jennifer's ability to intervene in the adoption proceedings, Jennifer should seek redress of this right in the adoption proceeding—if indeed the county court again denies her motion. The speculative effect of the district court's stay upon Jennifer's right to intervene in the adoption proceeding in county court does not rise to the level

of "affecting a substantial right"[67] for purposes of a final order analysis.

## CONCLUSION

Neither the order granting consent to adoption nor the order staying the custody proceedings pending further order of the court present a final, appealable order. Accordingly, we dismiss Jennifer's appeal for lack of jurisdiction.

APPEAL DISMISSED.

WRIGHT, J., not participating.

---

[67] See § 25-1902.