GEORGE FAULHABER, APPELLEE, V. ROBERTS DAIRY COMPANY, APPELLANT.

24 N. W. 2d 571

FILED OCTOBER 11, 1946. No. 32157.

*Lester L. Dunn,* for appellant.

*Albert S. Johnston,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

CHAPPELL, J.

This is a workmen's compensation case. Upon a hearing before one judge of the compensation court, wherein plaintiff was without counsel, his application was dismissed for insufficiency of the evidence. Plaintiff then employed counsel who timely took the required statutory steps to obtain a rehearing de novo before the three judges. Upon rehearing, plaintiff was granted an award of temporary total disability from September 18, 1945, to February 1, 1946, inclusive, at eighteen dollars per week, and thereafter for one hundred and seventy-five weeks at the same rate, together with doctor and hospital bills, for amputation of his left hand.

Defendant appealed to the district court, where a judgment was entered affirming the award and allowing plaintiff one hundred fifty dollars attorney's fees for services rendered in that court. Defendant then perfected an appeal

to this court, assigning as error substantially: (1) That the court acted without or in excess of its powers; (2) that the award and judgment was obtained by evidence contrary to that given by plaintiff at the initial hearing, therefore is discredited as a matter of law and should be disregarded; and, (3) that the award and judgment is not sustained by the evidence, but is based upon conjecture, speculation, and guess. We find that defendant's assignments cannot be sustained.

Plaintiff cross-appealed, contending substantially: (1) That defendant is liable for waiting time; (2) that attorney's fees, upon affirmance, should be allowed plaintiff for services rendered in this court; and, (3) that the district court should have allowed plaintiff attorney's fees for services rendered in the compensation court, where no allowance was made. With regard to the latter contention, the record does not disclose that plaintiff made objection in the compensation court for its failure to make such an allowance, and thereafter cross-appealed to the district court from a ruling thereon. We find that plaintiff's first contention is without merit; that the second should be sustained; and that the third, as the record comes to this court, is not presented for decision and requires no further discussion.

Before disposing of defendant's assignments, we will first discuss plaintiff's first and second contentions on the cross-appeal. It is well established in this jurisdiction that: "Where reasonable controversy exists between an employer and an employee as to the former's liability under the workmen's compensation act, the employer is not liable for the penalty for waiting time during the time the cause is pending in the courts for final determination." Redfern v. Safeway Stores, 145 Neb. 288, 16 N. W. 2d 196. We conclude that the circumstances in the case at bar bring it within that rule, and waiting time cannot be allowed.

In Rexroat v. State, 143 Neb. 333, 9 N. W. 2d 305, this court reaffirmed the rule that "The right to tax attorney's

fees in compensation cases is purely statutory." In that case we construed section 48-125, R. S. 1943, relating to attorney's fees. In the opinion it was said: "The power of this court to grant attorney's fees in compensation cases for services rendered here is contained in the words 'and, the supreme court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court.'

"We are of the opinion that the words 'in like manner' limit the power granted and refer to the provision in the same sentence with reference to the granting of fees in the district court; and that this court shall allow fees in like manner as shall the district court, that is to say, in the event the employer appeals to this court from an award against him in the district court and fails to 'obtain any reduction in the amount of such award' in this court, then a reasonable attorney's fee shall be allowed here." Since the case at bar comes within that rule, plaintiff is entitled to an allowance of attorney's fees for services rendered in this court.

Defendant's first assignment of error relates primarily to a question of procedure in the compensation court. The query is whether that court "acted without or in excess of its powers" in permitting plaintiff to file an amended petition after hearing before and dismissal by one judge and after the necessary steps had been appropriately taken to obtain a rehearing de novo before three judges. In that connection, a clerk in the compensation court, on a form provided by it, prepared plaintiff's original petition upon information furnished by plaintiff's wife, who was sent there by defendant. Plaintiff himself was then in the hospital, and neither he nor his wife had theretofore obtained legal or medical counsel or advice.

The original petition alleged substantially that in October 1944, plaintiff "Hit thumb with a hammer. No disability resulted immediately, but the injury became disabling about August, 1945, and has grown progressively worse until it

has become necessary to amputate the entire hand, which amputation has been done as of December 8, 1945."

After dismissal by one judge, plaintiff advised with and employed counsel for the first time, who prepared and filed the amended petition. It alleged substantially that on or about August 20, 1945, "Some molten solder got caught in a bandage on the end of plaintiff's left thumb, burning somewhat deeply the thumb which had not fully recovered from a previous injury. The thumb became very painful and in about a week was sent by employer to company physician. About three weeks later gangrene set in requiring amputation first of thumb and later of left hand." Defendant filed answer thereto, alleging among other things that plaintiff's amended petition "claims an entirely new and different cause of the nature and extent of his injury."

Section 48-168, R. S. 1943, provides: "The Nebraska Workmen's Compensation Court shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided, but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of sections 48-101 to 48-190."

We conclude that in view of the beneficial character of the Workmen's Compensation Act and for the reasons hereinafter stated, permission to file the amended petition before the trial de novo was clearly within the power and discretion of the compensation court. 71 C. J., Workmen's Compensation Acts, § 831, p. 1051. Without doubt, evidence of the burn would have been admissible as an incident in the development of plaintiff's injury and disability, even under the original petition. After such evidence had been adduced and its importance shown by medical evidence, the amendment would have been proper, even under section 144 of the civil code, appearing as section 25-852, R. S. 1943. Perkins v. Young, 133 Neb. 234, 274 N. W. 596.

Further, section 25-846, R. S. 1943, specifically provides: "No variance between the allegation in a pleading and the proof is to be deemed material unless it have actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as may be just." Section 25-847, R. S. 1943, also provides: "Whenever the variance is not material, as provided in section 25-846, the court may direct the fact to be found according to the evidence, and may order an immediate amendment without costs."

In this case, the filing of the amended petition gave defendant notice in advance, with ample opportunity in which to prepare a defense and secure all the evidence at hand to contradict plaintiff's claim. Under the circumstances, we find no material variance which could have actually misled defendant to its prejudice.

With relation to the statute of limitations, we find that under the circumstances it could not vary the conclusion. As late as Lind v. Nebraska National Guard, 144 Neb. 122, 12 N. W. 2d 652, this court held that: "Failure to make claim upon an employer for compensation within six months is not a defense if the accidental injury is latent and progressive and cannot with reasonable certainty be recognized at first as compensable. In such case, however, claim must be made within six months from the time the employee acquires knowledge of a compensable disability as a result of the accident."

It is undisputed that the hammer blow occurred in October 1944. It is undisputed that plaintiff suffered no compensable disability until September 18, 1945, and it could not be recognized with reasonable certainty that there would ever have been any compensable disability therefrom until in August 1945, after plaintiff suffered a burn

upon his thumb and defendant sent him to its physician. Plaintiff thereafter made claim by filing his original petition on December 15, 1945, well within the statutory period.

The next question is whether plaintiff's evidence should be discredited as a matter of law and disregarded. We are without benefit of a transcript of the evidence, adduced by plaintiff at the initial hearing. In the rehearing de novo, he was asked by defendant's counsel: "Q. You said nothing about any solder getting under the bandage on your thumb, did you, at that time? A. I wasn't asked whether there was any other accident. * * * Q. Is there anything else you haven't told this Court which you think the Court should know? A. Well, if somebody had asked that question if I had hurt it any other way, I would have thought about it."

Defendant relies upon Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381, but we conclude that it has no application. As the record comes to this court, there is no conflict shown to exist between the testimony of plaintiff given at the first hearing and that given at the second. So far as this record shows, plaintiff's testimony as to the injury by a hammer blow is the same as previously given, but at the rehearing de novo he testified to further facts of which no inquiry was made at the first, in order to remove conjecture, speculation, or guess if any existed as to the cause of his disability.

In conclusion, we come to a discussion of the case on its merits. There is no controversy with reference to the amount of the award. The sole question is whether the award and judgment is sustained by the evidence. In that regard, there is no dispute in the evidence except upon the question of whether plaintiff informed defendant of the hammer blow and burn. Plaintiff testified in substance that he told the defendant's superintendent about the hammer blow right after it happened, and that a couple of days after the burn, he explained to the superintendent that he burned his thumb, but didn't think it amounted to anything. The superintendent, who served as such during plaintiff's employ-

ment, testified in substance that to the best of his memory, plaintiff did not tell him about the hammer blow or report it as an accident, although that was not ordinarily done unless medical attention was required. Neither did he recall that plaintiff said anything to him about the burn before or at the time he required that plaintiff see the company physician. A superintendent, who succeeded the former on October 1, 1945, also testified that he first saw plaintiff at home in December 1945, or January 1946, at which time plaintiff told him about the hammer blow, but he "heard no words said about the burn."

Otherwise the evidence is undisputed. It discloses that plaintiff was employed by defendant as engineer and boiler man in its cheese plant from June 10, 1943, until September 18, 1945. In October 1944, while plaintiff was bending a heavy iron pipe hanger it slipped in a vise, causing him to hit his thumb with a hammer. There were no objective symptoms of injury except that from that time until August 1945, the thumb was tender and a callous formed on the end over which part of the time plaintiff wore a Band-aid to facilitate his work, which was done efficiently and without any apparent disability until on or about August 20, 1945. At or about that time, while soldering a wire under pressure upon a curd cutter, a little ball of molten solder rolled off the hot iron into the Band-aid and upon plaintiff's thumb, burning it fairly deeply. It pained him at the time, but thinking it was not of serious import, he applied a burn ointment from defendant's first-aid kit, put on a fresh Band-aid, finished the job at hand, and went home. His wife testified that she then saw the burn, which was small at the time, but grew worse. Plaintiff continued to work as usual. However, a few days later, he took his wife to see their family physician at Panama. The plaintiff's thumb was bandaged at the time, with the company burn-ointment upon it. The physician examined plaintiff's thumb and prescribed that plaintiff quit the burn ointment and keep the thumb wrapped and moist. In the meantime, it

pained plaintiff badly, and on August 27, 1945, a week or ten days after the burn, defendant's superintendent, who noticed plaintiff's thumb was bothering him, sent him to the company physician. In spite of competent professional care by the company physician, plaintiff's thumb continued to get worse, an open sore developed, and on September 19, 1945, he was sent to a hospital.

The exact chronology and nature of plaintiff's accidents and injuries were not entirely clear in the history first obtained by the company's physician and consulting surgeon. However, in a report to the insurance carrier on November 13, 1945, the company physician said: "I am quite sure when this patient first came in he gave me the impression of having injured the thumb just a few days before he came to me." An orthopedic surgeon saw plaintiff on September 20, 1945, and was called in consultation by the company physician on October 8, 1945. After that date the surgeon took charge of the case. At that time, the surgeon got a history from the hospital records to the effect that sometime—a short time—before plaintiff had sustained an injury to his thumb, which resulted in an infection around the thumb nail, requiring its removal. At the time the surgeon examined plaintiff, the lesion had become an infected ulcer which had not healed properly. Following treatment, it developed into gangrene, making it necessary to remove plaintiff's thumb on October 29, 1945. Nevertheless, the gangrene progressed, and a second operation was necessitated, removing more of the bone on November 26, 1945, which was followed by a third on December 8, 1945, amputating the entire hand at the middle third of the forearm. Plaintiff, at the time of the rehearing, had substantially recovered without recurrence.

The surgeon testified that plaintiff had some arteriosclerosis of long standing, and necessarily used a crutch because many years before his left leg had been amputated, but that such conditions alone could not have caused plaintiff's disability without an exciting cause. He gave as his

opinion that because of the condition resulting from the hammer blow and preexisting disease, the burn, plus some superficial or secondary infection, was the immediate exciting cause of a vascular spasm, clearly defined, which led to the gangrenous condition, necessitating amputation.

We are mindful that in Williams v. Watson Bros. Transp. Co., 145 Neb. 466, 16 N. W. 2d 199, relied upon by defendant, this court held that: "The value of the opinion of an expert witness is dependent on, and is no stronger than, the facts on which it is predicated. The opinion has no probative force unless the premises upon which it is based are shown to be true." Conversely, however, the opinion of such a witness has probative force if the premises upon which it is based are shown by a preponderance of the evidence to be true, as in the case at bar.

It is the rule in this jurisdiction that to sustain an award in a compensation case, it is sufficient to show by a preponderance of the evidence that an injury resulting from an accident arising out of and in the course of the employment and preexisting disease combined to produce disability. Yakal v. Henkle & Joyce Hardware Co., 145 Neb. 365, 16 N. W. 2d 531.

We conclude from the undisputed evidence heretofore outlined, that plaintiff's case comes within and is governed by that rule. Therefore, the judgment of the district court is affirmed and plaintiff is allowed $200 attorney's fees for services in this court.

AFFIRMED.

WENKE, J., participating on briefs.