AUGUST H. WERNER, APPELLEE, v. NEBRASKA POWER COMPANY ET AL., APPELLANTS.

31 N. W. 2d 315

Filed March 12, 1948. No. 32382.

*Fraser, Connolly, Crofoot & Wenstrand, J. V. Benesch,* and *W. H. Wright,* for appellants.

*Lee & Bremers,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and BARTOS and JACKSON, District Judges.

SIMMONS, C. J.

Plaintiff secured an award of permanent total disability as a result of a hearing before one judge of the Workmen's Compensation Court. A like award was rendered as a result of a rehearing before the Workmen's Compensation Court. A like award was entered in the district court as a result of a hearing under the provisions of section 48-184, R. S. 1943. Defendants appeal. We affirm the judgment of the trial court.

Defendants' first two assignments of error here are: (1) "The Court erred in refusing to set aside the findings of fact and award made by the Workmen's Compensation Court, which findings of fact are not conclusively supported by the evidence in the Record"; (2) "The Court erred in affirming the award of the Workmen's Compensation Court, allowing the plaintiff full compensation for permanent total disability."

Both parties treat these assignments as sufficient to require a review here under the provisions of section 48-185, R. S. 1943, that a judgment of the district court may be modified or set aside only upon the ground that "the findings of fact are not conclusively supported by the evidence as disclosed by the record, and if so found, the cause shall be considered de novo upon the record."

Defendants ask for trial de novo. Plaintiff submits that the award is conclusively supported by the record, and in any event the award should be affirmed upon trial de novo. This procedure calls for us to review the evidence. If upon that review we find the award is conclusively supported by the evidence, that ends the matter. If, however, as a result of a review of the evidence on a trial de novo we find that the award should be sustained, it is not necessary to determine the question as to whether the award is "conclusively supported

by the evidence." If we find as a result of a trial de novo that the award should be modified or set aside, then obviously it is not conclusively supported by the evidence. As a practical proposition our review here is de novo upon the record. We so review this evidence. It is a fact question. It is conceded that defendant suffered a compensable accident resulting in a severe injury to the lower spine and back. The dispute is as to whether or not as a result of the accident he suffered an injury to the cervical spine with a resulting disability to shoulders, arms, and hands.

The accident occurred on April 16, 1945. Plaintiff at the time of the accident was 69 years of age, a large man, in good health, and able to do the heavy manual labor involved in concrete or cement work. No illnesses or disabilities are shown, save as to one finger, which is not involved here. Plaintiff was a cement mason, working on a repair job to a concrete wall. He was standing on a scaffold suspended six to nine feet above the surface beneath him. The ground below was covered with coal used in a heating plant. Apparently it sloped from the wall to the ground. The scaffolding broke and plaintiff fell. He testified that he hit the ground in a sitting position. Plaintiff remained in the position in which he fell for a few minutes, was helped up later by fellow employees, and immediately complained of pain in his lower back. He mentioned no other pain. He was taken to the hospital. At the hospital the diagnosis was fractures of the second and third lumbar vertebrae. The doctor making the X-ray on April 17 found "a definite compression fracture of 1st and probably some damage of the intervertebral disc between the 2nd & the 3rd lumbar vertebrae."

On April 23, 1945, plaintiff was placed in a cast from legs to neck, not including arms. The diagnosis then was a "Compression fracture, slight, first lumbar; slight compression - posterior margin, second lumbar at disc region." Plaintiff remained in this or another cast for

some two months when it was removed and he was placed in a steel back brace from his shoulders to hips. He wore this for some months and since has worn a corset that braces his lower back. There is no serious dispute but that this lower back condition is disabling so far as plaintiff's performing hard physical labor is concerned.

We now go to the evidence as to shoulder, arm, and hand injury. Plaintiff testified that after the fall he was lying on his right elbow when he first knew what happened. A fellow workman, testifying for defendants, tried to reconstruct the accident. He testified that in the fall plaintiff could not have come in contact with the plank on which he was standing, but "could have hit the wall with his shoulder"; that his right shoulder was bruised; and that after hitting the coal in his fall, he slid on the coal for some feet. The hospital records show at time of admission "No External Evidence of Injury." Plaintiff testified that after he was in the hospital he had bruised spots on his right shoulder. A physician examined plaintiff in October 1945, before any controversy had arisen with reference to compensation. Plaintiff's complaint was "Pain in arms." The physician recites a history given him at that time containing the following: "During the cast application he lay on his face, his chin resting on the table and slipped off at one time. Pain then radiated from his neck over his shoulders and down both arms to his little and ring fingers, with numbness and weakness developing later." The same history recites that plaintiff's "neck started hurting him after the cast was put on, about one week after the injury, not noted before." Defendants in their reply brief state that plaintiff gave that history to the doctor. The attending doctor does not remember anything unusual happening although there might have been a slight slipping. The cast was put on seven days after the accident.

The bedside charts show that plaintiff was in con-

siderable pain from the beginning of his hospital treat-
ment and was repeatedly given drugs to deaden the
pain and induce sleep. The charts show also that be-
ginning with May 5, plaintiff complained of "pain in
left arm," of "numbness in left arm," of pain in left arm
not relieved by massage, "pain in arms," and "shooting
pains" in shoulders and arms. In the face of this record
the doctor testified that there was no complaint while
plaintiff was in the hospital of pain in the cervical or
neck region. The evidence is definite that during the
first weeks plaintiff was in the hospital, he was unable
to feed or shave himself. There is no serious medical
contention that this inability of plaintiff to serve himself
was caused by the cast. So far as determinable from
the record, it began before the cast was applied.

It is apparent that the attending doctors considered
that the shoulder pains were caused by the cast and
that they would disappear when the cast was removed.
Plaintiff was discharged from the hospital on June 16.
The cast was removed shortly thereafter. The condi-
tion of the shoulders, arms, and hands continued and
became worse. The first X-rays of the neck and shoul-
der area were taken in August. The experts seem to
agree that such an examination might not reveal evi-
dence of an injury such as plaintiff claims here. De-
fendants' physicians were unable to relieve or correct it.

At the time of the trial the plaintiff's hands had a
contractual deformity and loss of grip, save for the
index finger and thumb. There was a general muscular
waste in the arms, some loss of pain sensation in the
arms and hands, a loss of arm and shoulder movements,
and pain in arms and neck region. The expert witness
who made this examination testified that in his opinion
it was the result of a cervical spine injury caused by
the accident. There also is some leg involvement of
later appearance, which plaintiff's expert witness con-
nected with the accident.

Defendants' attending physician testified that he had

no knowledge of any complaint of pain or injury to the neck until some time after hospitalization, and that in his opinion the occurrence of this disability was too remote to be traced to the accident.

Defendants' expert witness, who had placed plaintiff in the cast and conducted some of the examinations thereafter, testified that he could not connect a cervical spine injury with the compression fractures in the lower back. On cross-examination he said that to cause such an injury to the cervical region, there would have to be a "fairly severe" injury to the lumbar spine; that to connect the two he would expect symptoms in the neck to appear within a week, such as pain in the neck region, with numbness and tingling in his fingers, followed by weakness in his hands and arms, and loss of nerve sensation; that he had no information of neck pain early in this case; and that with such information it might make a difference in his diagnosis. His final testimony was that the injury in the lumbar region was not severe enough to cause an injury in the neck region.

We find in the record no suggestion of the cause of this injury, save the accident involved.

Without further discussing the evidence, it is our conclusion on trial de novo that the facts and circumstances, and the inferences properly to be drawn therefrom, all point directly to the conclusion that plaintiff's disabilities and injuries were caused by the accident he suffered. We so find. The findings and judgment of the compensation court and the district court are in accord with the record and are supported by ample proof. We find no reason to modify or set aside the judgment of permanent and total disability resulting from the accident.

The defendants' next assignment of error is that in any event the trial court erred in awarding compensation for the year 1946, during which calendar year the plaintiff was gainfully employed. It appears that from January 1, 1946, to January 1, 1947, plaintiff was busi-

ness agent for his union. Defendants paid compensation until April 1, 1946, when it was stopped. The evidence as to the nature of the work and employment is fragmentary. It appears to have been an elective job on an annual basis. Compensation was on a commission basis. For the year plaintiff earned an average of $38 to $40 a week. The work did not require any "labor," lifting, bending, or stooping, nor was it work at his trade. Whatever it was, he did most of it over the telephone using his good fingers. He made the round of the jobs two or three times a week, although whether or not for all of the weeks is not shown, and the extent of this travel is not shown. On these occasions he drove his own car using his index fingers and thumbs on the steering wheel. He did not seek re-election for two reasons. Plaintiff did not want another accident, and superintendents on jobs did not want him climbing ladders, because of the danger to him of accidents on jobs. It does not appear that he could have been re-elected had he desired it. Defendants cite no authority to sustain their contention. On the authority of Elliott v. Gooch Feed Mill Co., 147 Neb. 612, 24 N. W. 2d 561, the assignment is not sustained.

An attorney's fee was not allowed in the compensation court. An attorney's fee of $200 was allowed in the district court. Defendants assign the allowance of the fee as error, contending that such a fee can only be allowed where the employer refuses payment of compensation, or neglects to pay compensation for the 30-day period following the accident. The statute is: "Whenever the employer refuses payment, or when the employer neglects to pay compensation for thirty days after injury, and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the court. In the event the employer appeals to the district court from the award of the compensation court, or any judge thereof, and fails to obtain any reduction in the amount of such award,

the district court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court." § 48-125, R. S. 1943. The first sentence above quoted obviously applies to the allowance of an attorney's fee in the compensation court. We so construed it in Redfern v. Safeway Stores, Inc., 145 Neb. 288, 16 N. W. 2d 196. Defendants rely upon this decision, overlooking the fact that there the disallowance was of a fee in the compensation court. The second sentence above quoted is applicable here. It authorizes the allowance of an attorney's fee by the district court. We so held in Weitz v. Johnson, 143 Neb. 452, 9 N. W. 2d 788. The error assigned is without merit.

Plaintiff requests the allowance of an attorney's fee in this court. The statute authorizes it. We have so held in Faulhaber v. Roberts Dairy Co., 147 Neb. 631, 24 N. W. 2d 571. Plaintiff is allowed an attorney's fee of $250 for services in this court.

The judgment of the district court is affirmed.

AFFIRMED.