IN RE INTEREST OF J.L.H., J.L.H., AND R.H., CHILDREN UNDER
18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. J.H., APPELLANT, AND C.H.,
APPELLEE.

507 N.W.2d 641

Filed September 14, 1993.　No. A-92-904.

Charles R. Maser for appellant.

Wesley D. Nespor, Greeley County Attorney, for appellee State.

Brad Roth for appellee C.H.

Michael J. Shaughnessy, guardian ad litem.

CONNOLLY, HANNON, and MILLER-LERMAN, Judges.

CONNOLLY, Judge.

This appeal arises from an order of adjudication on a petition filed by the State of Nebraska in the county court for Greeley County, Nebraska, sitting as a juvenile court, asking the court to exercise emergency custodial jurisdiction over the children of the appellant, J.H., and his former wife, C.H. When the petition was filed, J.H., a resident of Missouri, had legal and physical custody of the children and the Missouri court that had dissolved the marriage of J.H. and C.H. had custodial jurisdiction of the children. The children had been transported to Nebraska by the mother in violation of an existing Missouri custody decree because, according to the mother, the children had to be rescued from the alleged physical

and sexual abuse visited upon them by the father.

The State of Nebraska petitioned the Greeley County Court to adjudicate the children pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988). The juvenile court made an initial finding that there was probable cause that the children faced an emergency situation as defined in § 43-247(3)(a). The juvenile court exercised emergency custodial jurisdiction of the children and placed them in the temporary custody of the Nebraska Department of Social Services (DSS) pending further adjudication. After a subsequent hearing on the State's petition, the juvenile court found that the children were juveniles in a situation injurious to their health or morals pursuant to § 43-247(3)(a). The juvenile court continued to exercise custodial jurisdiction of the children, leaving them in the legal custody of DSS, with physical custody in the mother, pending a dispositional hearing.

The father appeals, assigning several errors in the proceedings and arguing that the juvenile court failed to comply with the Nebraska Child Custody Jurisdiction Act in its exercise of custodial jurisdiction of the children. We affirm.

## I. FACTS

The marriage of C.H. and J.H. was dissolved February 15, 1989, in the circuit court of Buchanan County, Missouri. The mother was awarded primary physical custody of the parties' three children: J.L.H., a daughter born December 28, 1982; J.L.H., a son born July 11, 1984; and R.H., a son born October 7, 1987.

In August 1990, the mother moved herself and the three children into the home of her boyfriend, who lived in Osborn, Missouri. The boyfriend was married at the time. His divorce decree did not become final until August 23, 1991.

Approximately 3 months after the move to Osborn, the mother and the children moved to Maysville, Missouri, with the boyfriend joining them later on a part-time basis. On November 17, while the boyfriend's wife was in the hospital recovering from an attempted suicide, the boyfriend, the mother, and the three children moved to Nebraska. The boyfriend took with him the two children of his marriage.

In January 1991, the circuit court of Buchanan County, Missouri, issued a modification of the decree of dissolution of the marriage of C.H. and J.H. The mother was found in contempt of court for having willfully violated the court's order concerning the father's visitation rights by moving the children to Nebraska and establishing their residence some 300 miles from the father's place of residence in Missouri. Citing the mother's repeated uprooting of the children and several periods during which the children were subjected to living arrangements that included the mother's live-in male companions, the court transferred custody of the children to the father. The mother was granted visitation rights.

In March 1991, the mother contacted the Division of Family Services in Missouri to report that the father was abusing the children. A child protective services worker investigated the allegations. The investigation yielded no evidence of abuse, and the report was coded "unsubstantiated."

In June 1991, the mother traveled to Missouri to exercise her visitation rights. On Friday, June 7, she picked up the children for a weekend visit. On the evening of Sunday, June 9, instead of returning the children to the father, the mother took the children with her back to Nebraska. The mother contacted DSS on the morning of June 11 and reported that the children had been abused by the father.

The record reflects that the daughter was examined on June 17 by a Dr. Martin, who found no signs of sexual assault or abuse.

Officer John Frederick of the Nebraska State Patrol interviewed the mother, the daughter, and the older son on June 21. In his report, Frederick stated that the mother told him that back in Missouri, the children's physician, Dr. Betsy McClure, had said that she suspected that the children were being physically and sexually abused. The mother testified that Dr. McClure had told her this in the fall of 1990. The record contains a letter from Dr. McClure dated June 25, 1991, in which the doctor declared that she did not recall ever making such a statement, that she had no written record of any such statement, and that in treating the children she had never found any evidence of such abuse.

The daughter was examined on June 25 by Dr. Susan Greenwald. Dr. Greenwald found an abnormal thickness at the 9- or 10-o'clock position of the daughter's hymen and a prominence of blood vessels, which prominence Dr. Greenwald said was caused by an injury sometime in the past that had since healed. Because the hymen was not torn, Dr. Greenwald did not believe there had been vaginal penetration. In her medical report, Dr. Greenwald wrote: "Exam is consistent with patient history of molestation although vaginal penetration is doubtful." The history of molestation referred to by Dr. Greenwald had been provided by the mother.

On June 21, the State filed a petition in Greeley County Court pursuant to § 43-247(3)(a) alleging that the children were minors "in a situation that is dangerous to the life or limb of such juveniles or injurious to [their] health or morals." The State petitioned the juvenile court to adjudicate the matter pursuant to its authority under § 43-247(3)(a). In conjunction with the § 43-247 petition, the State filed a motion for emergency detention of the children. The State moved the court to place the children in the temporary custody of DSS pending a hearing to determine whether there was probable cause to continue to exercise jurisdiction over the children. Claiming to act under Neb. Rev. Stat. § 43-255 (Reissue 1988), the court detained the children and placed them in the temporary custody of DSS. A probable cause hearing was scheduled for June 26.

The probable cause hearing was held. In his opening statement, the father moved the court to dismiss the petition on grounds that the Greeley County Court lacked jurisdiction. The motion to dismiss was taken under advisement, and a hearing on the merits ensued. On July 17, the court filed an order finding that there was probable cause to retain jurisdiction over the children pending further proceedings. The court stated that it "acknowledges the existence of a Circuit Court Order of Custody in the State of Missouri but retains jurisdiction over the juveniles notwithstanding that order." The children were placed in the temporary custody of DSS pending adjudication.

On August 9, the father filed an application for review of the temporary placement of the children. DSS had placed the children in the home of the mother and her boyfriend. The

father moved the court to place the children in a foster home in Missouri at his expense. The court found that the father had "not presented evidence sufficient to warrant a change of the status quo." The children remained in the legal custody of DSS, with physical custody in the mother.

In a filing dated October 4, the court ruled on several matters. The State had filed a notice of intent to offer into evidence hearsay statements of the daughter and the older son. The statements were contained in reports prepared by DSS and the Nebraska State Patrol. The State had also filed a motion in limine seeking clarification of the extent to which the court would permit the State's expert witnesses to testify on matters such as the abilities of the children to distinguish fact from fiction and common reasons for delays in reporting abuse. Since the children would be available to testify, the court found that the State could use the hearsay statements only as corroborative evidence. If the children were not able to testify at trial, the State would be allowed to renew its motion to use the hearsay statements as direct evidence. The court found that the expert witnesses could testify to the extent outlined in the State's motion in limine, but that they would not be allowed to offer opinions as to the veracity of the children. The court's order also included the following entry:

> The Court . . . has contacted Judge Jackson of the Circuit Court in Missouri pursuant to the [Uniform Child Custody Jurisdiction Act] to discuss which Court is the appropriate forum. The Court advises the parties that Judge Jackson is not insisting that jurisdiction be transferred to Missouri. Based upon the Court's review of the applicable law andthe [sic] fact that this is a Juvenile Court proceedingand [sic] not a custody proceeding per se . . . this Court has jurisdiction to proceed.

The adjudication hearing was held October 4 and 5. The father again challenged the exercise of jurisdiction by the Greeley County Court. A hearing on the merits ensued. In addition to social worker Kaye Mindt Long's live expert testimony, the State submitted expert deposition testimony from Dr. Patricia Sullivan, a pediatric psychologist, and from Dr. Greenwald, the physician who had examined the daughter

on June 25, to corroborate the testimony by the daughter that she had been abused by the father. Dr. Sullivan testified that she believed that the older son, too, had been sexually molested by the father. The father introduced expert deposition testimony from Dr. John Reilly, a specialist in obstetrics and gynecology, who testified that the thickness in part of the daughter's hymen and the prominence of blood vessels could have resulted from several causes other than touching by an adult. Dr. Reilly's testimony was based on his analysis of the report prepared by Dr. Greenwald after she had examined the daughter on June 25. Dr. Reilly never examined the daughter.

The father moved the court to dismiss the petition after the State had rested and again moved for dismissal after putting on his own evidence. The court denied both motions. The matter was taken under advisement.

While the matter was pending, the court issued an order that included the following entry:

> The Court then addresses the issue of the telephonic request by Judge Jackson to have the juveniles available to testify in Missouri on the contempt hearing currently pending. . . . The Court . . . finds that it is not in the [children's] best interest to be sent to Missouri while the Greeley County Case is still under advisement. Therefore, this Court respectfully declines the request of the Missouri Court pending the decision on the adjudication of [the case in Greeley County Court].

In the order of adjudication, issued November 20, the court made the following findings:

> [B]oth [the daughter and the older son] were telling the truth, sans maternal influence . . . and their veracity is amply borne out by the collective corroboration of the various social, psychological and medical experts who interviewed and examined them . . . .
>
> The allegations . . . have been proved by the State with a preponderance of the evidence [;] the molestation of these two minor children by the father in Missouri constitutes a "situation that is dangerous to the life or limb of such juveniles or injurious to the health or morals of such juveniles" within the purview and meaning of

[§ 43-247(3)(a)] and they are herewith adjudicated accordingly including [the younger son], albeit there is no evidence of his being molested; however, he otherwise would be exposed to the same dangerous situation . . . .
Temporary custody of the children in DSS was continued pending the scheduling of a dispositional hearing.

There is no mention in the order of adjudication of the issue of jurisdiction, nor is there any discussion about the availability of the children as witnesses in the contempt proceeding in the circuit court in Missouri. The record does not indicate whether the children were ever made available to testify in Missouri.

On appellate review, the Greeley County District Court affirmed the judgment of the county court.

## II. ASSIGNMENTS OF ERROR

The father assigns 11 errors, which we consolidate and consider in the analysis below.

## III. STANDARD OF REVIEW

On appeal of any final order of a juvenile court, an appellate court tries factual questions de novo on the record and is required to reach a conclusion independent of the findings of the trial court, but, when the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of L. W.,* 241 Neb. 84, 486 N.W.2d 486 (1992).

An abuse of discretion occurs when a trial court's reasonings or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Philipps,* 242 Neb. 894, 496 N.W.2d 874 (1993).

## IV. ANALYSIS

### 1. JURISDICTION

Assignment of error: The district court erred in affirming the judgment of the juvenile court on the issue of jurisdiction because the juvenile court failed to comply with the Nebraska Child Custody Jurisdiction Act in exercising jurisdiction over the children.

One of the main objectives of the Uniform Child Custody

Jurisdiction Act (UCCJA), adopted by the Nebraska Legislature as the Nebraska Child Custody Jurisdiction Act (NCCJA) at Neb. Rev. Stat. § 43-1201 et seq. (Reissue 1988), is to prevent the jurisdictional confusion that can arise when a parent unilaterally removes a child from the state of a court that has rendered a decree concerning custody of the child. See Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam. L.Q. 203 (1981). See, also, § 43-1201(1)(a). In such cases, "the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the [custody] decree. They must respect and defer to the prior state's continuing jurisdiction." Bodenheimer, *supra* at 214. This principle is incorporated into the NCCJA at §§ 43-1213 and 43-1214. Thus, it is beyond dispute that the circuit court of Buchanan County, Missouri, had jurisdiction of the children, and any issues involving their custody, when the State of Nebraska filed its initial petition in these proceedings in Greeley County Court on June 21, 1991.

The juvenile court apparently did not believe it was confronted with a custody proceeding. The juvenile court was mistaken. Under § 43-1202(3) of the NCCJA, "[c]ustody proceeding shall mean . . . (b) [p]roceedings in a juvenile court in which a person under the age of eighteen years is alleged to be a child as described in subdivision (3) of section 43-247." The State's initial petition moved the court to adjudicate the children under § 43-247(3)(a). Every decision rendered by the juvenile court in the course of these proceedings affected the legal and physical custody of the children. At every step of these proceedings, from the initial filing on June 21 to the order of adjudication issued on November 20, the juvenile court was involved in a custody proceeding.

Although as a general rule the juvenile court was bound by the NCCJA to defer to the custodial jurisdiction of the Missouri court, the juvenile court's exercise of custodial jurisdiction over the children on June 21 was justified under the emergency exception in the NCCJA. Under § 43-1203(1)(c), a Nebraska court can exercise jurisdiction to modify an existing out-of-state custody decree if the child is physically present in

Nebraska and it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse. In its discussion in *In re Interest of L.W.*, 241 Neb. 84, 486 N.W.2d 486 (1992), of emergency custodial jurisdiction under § 43-1203(1)(c), the Nebraska Supreme Court stated two propositions of law that bear directly on the case before us. The court declared that when the welfare of a child present in Nebraska is threatened by a grave emergency, a Nebraska court may enter orders for the protection of the child even if the orders contravene those of another state that still retains custodial jurisdiction of the child. The court also ruled that the child's physical presence in Nebraska is alone sufficient to confer jurisdiction on a Nebraska court to make a child custody determination under § 43-1203(1)(c). In the instant case, the juvenile court claimed to have placed the children in the temporary custody of DSS pursuant to its authority under § 43-255, but that statute refers to juveniles taken into temporary custody by a peace officer. We find that the juvenile court was authorized under § 43-1203(1)(c) to place the children in the temporary custody of DSS on June 21, pending a probable cause hearing on the State's § 43-247 petition on June 26.

The juvenile court found that there was probable cause to believe that the emergency conditions alleged in the State's petition existed. Consequently, the court directed that temporary custody of the children should remain with DSS. This the court was authorized to do. However, once the emergency proceedings were concluded with the court order of July 17, any further adjudication of the custody of the children by the juvenile court was unauthorized unless justified by some other exception.

Under § 43-1214(1) of the NCCJA,

[i]f a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction . . . or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

The Greeley County Court had properly exercised emergency

jurisdiction over the children, but emergency jurisdiction alone was not a sufficient basis for the Greeley County Court to continue to adjudicate the custody of the children. The Missouri court still had custodial jurisdiction of the children. The Greeley County Court was authorized to make further determinations regarding the custody of the children only if the Missouri court relinquished custodial jurisdiction for that purpose.

Unfortunately, the record does not contain a definitive statement one way or the other on the question of whether the Missouri court declined custodial jurisdiction of the children. Thus, we review excerpts from the record that we believe shed light on this question.

The following is an excerpt from a journal entry in the circuit court of Buchanan County, Missouri, dated July 10, 1991:

> The Court hears additional evidence and argument concerning [the mother's] motion [for continuance] and finds that the motion must be sustained in view of the unanswered jurisdictional questions [raised by the action in Greeley County] and the necessity of [the mother's] having an attorney'[s] representation in view of [the father's] requested relief of incarceration. The hearing on [the father's] motion for contempt is set for September 5, 1991, at 9:30 a.m.

The Greeley County Court filed its order finding probable cause to exercise emergency jurisdiction on July 17. The following is an excerpt from another journal entry in Buchanan County Circuit Court, this one dated September 5, 1991:

> [The mother] orally moves this Court to reconsider her motion for continuance of this contempt hearing until after the juvenile court hearing in Greeley County, Nebraska, set for October 4 and 5, 1991 . . . . This Court finds that the juvenile court of Greeley County, Nebraska, has lawfully exercised jurisdiction over the minor children which are the subject of this proceeding and that this Court should continue the contempt hearing until after the Nebraska hearings of October 4 and 5, 1991. In the meantime, this Court should communicate with the judge of the Juvenile Court of Greeley County, Nebraska, and

exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring jurisdiction will be exercised by the more appropriate court pursuant to the [UCCJA].

Later in the same day, the Missouri circuit court made the following entry:

This Court exchanges information in the above-captioned case with Keith J. Kovanda, Judge of the Juvenile Court of Greeley County, Nebraska, by telephone with a view to assuring that jurisdiction over the minor children will be exercised by the more appropriate and convenient court in the best interest of the minor children. Judge Kovanda advises this Court that he will again discuss the matter of jurisdiction in a subsequent call.

The following is an excerpt from a journal entry filed in Greeley County Court on October 4: "[T]he Court advises the parties it has contacted Judge Jackson of the Circuit Court in Missouri pursuant to the UCCJA to discuss which Court is the appropriate forum. The Court advises the parties that Judge Jackson *is not insisting that jurisdiction be transferred to Missouri*." (Emphasis supplied.)

Apparently, there was another conversation between Judges Jackson and Kovanda that preceded the following excerpt from Judge Kovanda's journal entry in Greeley County Court filed November 8:

The Court then addresses the issue of the telephonic request by Judge Jackson to have the juveniles available to testify in Missouri on the contempt hearing currently pending. . . . The Court . . . finds that it is not in the [children's] best interest to be sent to Missouri while the Greeley County Case is still under advisement. Therefore, this Court respectfully declines the request of the Missouri Court pending the decision on the adjudication of [the case in Greeley County Court].

In terms of preservation of the record for appellate review, the jurisdictional negotiations between the Nebraska and Missouri courts were handled in a haphazard manner that unnecessarily complicates our review of the issue of

jurisdiction. We do not find in the record an unequivocal statement by the Missouri court in which that court declines custodial jurisdiction of the children. Under § 43-1207(9), "Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court." We recommend that a communication in which the court of another state declines jurisdiction should also be filed in the appropriate court. Furthermore, we recommend that the Nebraska court instruct the out-of-state court that in its statement declining jurisdiction, the out-of-state court should clarify the extent to which it is surrendering jurisdiction.

It appears that the main concern of the Buchanan County Circuit Court was to get the children back in Missouri after the Greeley County Court was finished with them so that the children could testify in the contempt proceeding in Missouri against the mother. There is no definitive statement from the Missouri court in which it formally declines to assume its prior custodial jurisdiction over the children, but the court did acknowledge as lawful the Nebraska court's exercise of emergency jurisdiction and did not insist that the case be transferred back to Missouri prior to the Greeley County Court's adjudication of the § 43-247 petition in October. We conclude from the record that the Buchanan County Circuit Court relinquished custodial jurisdiction of the children to the extent necessary to allow the Greeley County Court to adjudicate the § 43-247 petition and that the Missouri court reserved its right to exercise jurisdiction over the children for any proceedings subsequent to that adjudication, such as the contempt action against the mother or a dispositional hearing to modify the original custody decree. For purposes of this appeal, we find that the Greeley County Court complied in substance, if not in form, with the NCCJA in exercising jurisdiction over the children. Therefore, we affirm the judgment of the district court affirming the county court's exercise of jurisdiction to adjudicate the § 43-247 petition.

## 2. ADJUDICATION UNDER § 43-247

Assignment of error: The district court erred in affirming the juvenile court's order adjudicating the children under § 43-247(3)(a).

Section 43-247 states that "[t]he juvenile court shall have *exclusive original jurisdiction* as to any juvenile defined in subdivision . . . (3) of this section." (Emphasis supplied.) For reasons discussed above, the Greeley County Court could not have had exclusive original jurisdiction of the children. Thus, it would appear that the State's initial petition was flawed and that the juvenile court was mistaken in adjudicating the children pursuant to § 43-247(3)(a).

In *In re Interest of L.W.*, 241 Neb. 84, 486 N.W.2d 486 (1992), the Supreme Court found that the Legislature had incorporated § 43-247(3) into the NCCJA by referring to that statute in the definition of "custody proceeding" set out in § 43-1202(3)(b). The court also seems to have recognized a degree of interchangeability between § 43-247(3) and § 43-1203(1)(c), the emergency custodial jurisdiction provision in NCCJA. In *In re Interest of L.W.*, the juvenile court in Nebraska, unaware of an existing divorce decree in Iowa that included a determination of the custody of L.W., had assumed original custodial jurisdiction of L.W. under § 43-247(3). Later in the proceedings, the Nebraska court was informed of the prior custody determination in Iowa. The Supreme Court stated that "[s]ince the child was assaulted in Custer County, [Nebraska,] the juvenile court had temporary emergency jurisdiction under § 43-1203(1)(c) which would include a temporary custody placement of the child." *In re Interest of L.W.*, 241 Neb. at 103, 486 N.W.2d at 499. The reference to Custer County as the situs of the action giving rise to the emergency appears to be unnecessary for purposes of emergency jurisdiction because § 43-1203(1)(c) does not specify that the threatening person or situation must be in Nebraska. Only the child must be physically present in Nebraska. Thus, *In re Interest of L.W.* seems to stand for the proposition that § 43-1203(1)(c) can automatically be substituted for § 43-247(3) as a basis for custodial jurisdiction when it becomes apparent that exclusive original jurisdiction already exists in an

out-of-state court.

■ This approach conforms to the dictates of common sense. The Greeley County Court drew upon language from § 43-247(3)(a) to justify its exercise of jurisdiction over the children, claiming that they were in "a 'situation that is dangerous to the life or limb of such juveniles or injurious to the health or morals of such juveniles' within the purview and meaning of [§ 43-247(3)(a)]." That is another way of saying that it is necessary because of emergency circumstances to exercise jurisdiction and protect the children, which is the test for exercise of emergency custodial jurisdiction under § 43-1203(1)(c). Clearly, the statutes of Nebraska are designed to allow a court to exercise emergency custodial jurisdiction to safeguard children regardless of whether the jurisdiction arises originally in Nebraska or is usurped from another state for emergency purposes. However, the Supreme Court emphasized in *In re Interest of L.W.* the limited scope of a court's jurisdiction in cases where exercise of emergency jurisdiction by a Nebraska court encroaches on the jurisdiction of a court in another state. After finding that the juvenile court in Nebraska had temporary emergency jurisdiction over L.W., the court went on to state that

> the Iowa court retains continuing jurisdiction to render a final custody determination. We therefore order the juvenile court to refrain from modifying the Iowa divorce decree and to communicate with the Iowa court to determine the appropriate forum for this case. The Nebraska juvenile court will have permanent jurisdiction over the case if the State of Iowa declines jurisdiction or fails to take appropriate action. When another state has entered a child custody decree and one of the parents remains a resident of that state, generally the courts of this state are without jurisdiction to make a permanent change of custody unless the first state affirmatively declines jurisdiction or fails to take appropriate action.

*Id.* at 103, 486 N.W.2d 499. The circuit court of Buchanan County, Missouri, has entered a child custody decree, and the father presumably still lives in Missouri. Therefore, the Buchanan County Circuit Court retains continuing jurisdiction

to make any permanent changes in custody. The Greeley County Court cannot make any further determinations concerning the custody of the children without first communicating with the Missouri court. The Greeley County Court cannot order a permanent change of custody unless the Missouri court affirmatively declines jurisdiction.

### 3. DR. REILLY

Assignment of error: The district court erred in affirming the juvenile court's failure to consider the testimony of Dr. Reilly.

The record does not support the father's contention that the juvenile court refused to consider Dr. Reilly's testimony. The comment of the trial judge on Dr. Reilly, which the father quoted in his brief, was that "[t]he deposition of Dr. Reilly and his opinion [on whether the daughter had been abused are] of little probative value, absent his actually examining the child." The trial judge did consider Dr. Reilly's testimony. He found it of little probative value. In a bench trial, the judge sitting as the trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. See *Waite v. A. S. Battiato Co.*, 238 Neb. 151, 469 N.W.2d 766 (1991). The opinion of an expert witness is not binding on the trier of fact. *Way v. Hendricks Sodding & Landscaping, Inc.*, 236 Neb. 519, 462 N.W.2d 99 (1990). This assignment of error is without merit.

### 4. RECALL OF THE DAUGHTER

Assignment of error: The district court erred in affirming the action of the juvenile court permitting the State to recall the daughter to the witness stand over the objection of the father.

The daughter appeared to become upset during the father's very brief recross-examination and was unable to respond to questioning. Counsel for the parties had no further questions, so the daughter was excused, and the State was granted a few minutes' recess before calling its next witness. During the recess it was discovered that the daughter had become confused during recross-examination; this had upset her so much that she could not respond to further questioning. When the hearing resumed, the court allowed the State to recall the daughter and conduct further redirect examination.

■ "It is within the discretion of the trial court to permit subsequent examination of a witness after direct and cross-examination." *Nebraska Depository Inst. Guar. Corp. v. Stastny*, 243 Neb. 36, 51, 497 N.W.2d 657, 669 (1993). Thus, we will not disturb the ruling of the juvenile court unless it was clearly untenable and unfairly deprived the father of his substantial right to a fair trial.

To support his argument that the recall of the daughter constituted prejudicial error, the father quotes in his brief the following language found in *Faulhaber v. Roberts Dairy Co.*, 147 Neb. 631, 24 N.W.2d 571 (1946):

> A party's evidence should be discredited as a matter of law and disregarded only where, without reasonable explanation, he testifies to facts materially different concerning a vital issue than had been previously testified to by him under oath in another action, and the change was clearly made to meet the exigencies of the pending action.

(Syllabus of the court.) The most obvious distinguishing feature of *Faulhaber* is that it dealt with a situation in which a witness testified in two different legal proceedings. In the case at bar, the daughter's testimony on recall was further redirect examination in the same proceeding. *Faulhaber* offers nothing of use for our analysis of this assignment of error.

No other witnesses interrupted the testimony of the daughter. The father was able to conduct further recross-examination after the State finished with the daughter on recall, which provided him the opportunity to ferret out any inconsistencies he perceived between the daughter's previous testimony and her testimony on recall. We find nothing prejudicial to the father in this sequence of events. Therefore, we find no abuse of discretion and no error in the decision to allow the recall of the daughter.

### 5. ADMISSION OF DR. SULLIVAN'S DEPOSITION

Assignment of error: The district court erred in affirming the juvenile court's admission of the deposition testimony of Dr. Sullivan.

■ During the taking of Dr. Sullivan's deposition, the father

raised the following objection after the State had expressed its intention to use the deposition at trial: "Excuse me, I'm going to interpose an objection here while we're on it, to we [sic] object to the use of this deposition at trial. We are not stipulating to that." While he obviously made an objection, the father did not state the grounds for the objection. A prerequisite to an appeal based upon erroneous admission of evidence is a timely objection stating the specific grounds for the objection unless the grounds are apparent from the context of the record. *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992); *Bailey v. Farmers Union Co-op Ins. Co.*, 1 Neb. App. 408, 498 N.W.2d 591 (1992).

The father argues on appeal that the deposition was inadmissible because he thought it would be used only for discovery purposes and because the State had failed to show that Dr. Sullivan was unavailable to testify at trial pursuant to Neb. Evid. R. 804, Neb. Rev. Stat. § 27-804 (Reissue 1989).

Even if we give the father the benefit of the doubt and read into his objection an argument based on discovery versus use for trial, he still would not prevail on this issue in light of the following comment by the Supreme Court in *Maresh v. State*, 241 Neb. 496, 508, 489 N.W.2d 298, 308 (1992): "[W]e need not address the State's other contention that the deposition was inadmissible because it was taken for discovery only, except to note that the federal courts . . . have universally rejected a 'discovery-use' dichotomy as a criterion for the admissibility of a deposition."

There is on the face of the objection no hint of the father's argument on appeal based on rule 804, nor does the context of the record suggest a rule 804 argument. Therefore, we do not consider it.

For these reasons, we find no error in the admission of Dr. Sullivan's deposition testimony.

### 6. EXPERT TESTIMONY BY LONG AND DR. SULLIVAN

Assignment of error: The district court erred in affirming the juvenile court's reliance on the testing and evaluation procedures administered by Long and Dr. Sullivan.

The father cites a number of instances in the record

where he objected on foundation to the test results and evaluations discussed by Long and Dr. Sullivan and to the expert opinions based on those tests and evaluations. We believe there is merit in the father's arguments, particularly regarding instances in the record where the expert witnesses arguably validated the testimony of the children. See *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988) (it is not for an expert to suggest to a jury how a witness' testimony shall be weighed or evaluated). See, also, *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993) (an expert witness may not give testimony which directly or indirectly expresses an opinion that a child is believable, that the child is credible, or that the witness' account has been validated). However, we do not engage in a detailed analysis of the merits of this assignment of error because it will not affect the disposition of the case.

We note in summary fashion that much of the data and portions of the opinions offered by Long and Dr. Sullivan were erroneously admitted into evidence without proper foundation. Impermissible evidence, that is, evidence properly objected to at trial but erroneously admitted, is not considered by an appellate court. See *In re Interest of L.H. et al.*, 241 Neb. 232, 487 N.W.2d 279 (1992). Thus, in reaching our decision, we have not considered evidence properly objected to by the father but erroneously admitted by the juvenile court. However, significant portions of the experts' testimony were not objected to or, particularly in the case of Dr. Sullivan, were supported by sufficient foundation and were properly admitted. We do not review each of the father's contentions because even if we strip away all of the impermissible portions of the testimony of Long and Dr. Sullivan, the remnants of their testimony plus the deposition and physical examination report of Dr. Greenwald plus the testimony of the daughter and the older son all add up to a sum of evidence sufficient to satisfy the burden of proof in this case, which is proof by a preponderance of the evidence.

### 7. LONG SEATED NEXT TO THE DAUGHTER

Assignment of error: The district court erred in affirming the juvenile court's decision to let Long sit next to the daughter while the daughter testified.

In *Evers v. State*, 84 Neb. 708, 121 N.W. 1005 (1909), the Supreme Court held that because there was nothing in the record to indicate that the maneuver had prejudiced the defendant, the trial court had not erred in permitting an adult friend of the witness, an 8-year-old girl, to sit next to the girl on the witness stand while the girl testified before the jury. That holding is still good law, and many other jurisdictions also have held that it is permissible for a trial court to allow another person to sit or stand in close proximity to a child witness testifying live in court. See, 81 Am. Jur. 2d *Witnesses* § 723 (1992); Annot., 82 A.L.R.4th 1038 (1990). The record in the case at bar does not show that Long said or did anything prejudicial or disruptive during the daughter's testimony. We find no error in the juvenile court's decision to permit Long to sit next to the daughter while the daughter testified.

## 8. CREDIBILITY OF THE MOTHER

Assignment of error: The district court erred in affirming the juvenile court's decision to reserve judgment on the issue of the credibility of the mother until the dispositional phase of the proceedings.

We acknowledge that we are puzzled by the statement in the juvenile court's order of adjudication that the credibility of the mother was a consideration "more germane to disposition than adjudication." There is evidence in the record of previous occasions on which the mother lied in court in Missouri. The mother initiated an investigation in Nebraska of alleged abuse by the father 3 months after she had initiated a similar investigation of the father in Missouri. The children were in the mother's physical custody throughout the course of these proceedings. All of these factors related to the mother's credibility could have undermined the allegations against the father.

We find no prejudicial error here because we believe the credibility of the mother faded in importance as the proceedings progressed. On de novo review, we are concerned with whether the children were telling the truth, regardless of who or what initially prompted them to speak out. Even if we were to determine from the record that the mother was a

chronic liar, her lack of veracity did not produce the abnormal thickness and prominence of blood vessels in the daughter's hymen. The mother did not conduct the various psychological tests taken by the children and did not evaluate the results.

The juvenile court did not decide that the allegations were true because the mother said so. The court believed the allegations because the children had testified to them in court and because "their veracity [was] amply borne out by the collective corroboration of the various social, psychological and medical experts who interviewed and examined them." This court, too, finds that there was properly admitted expert testimony corroborating the testimony of the children. The issue of the mother's credibility was rendered virtually irrelevant by the testimony of the children and the experts. Therefore, the failure of the trial judge to rule on the mother's credibility did not constitute reversible error.

### 9. SUFFICIENCY OF THE EVIDENCE

Assignment of error: The district court erred in affirming the factual findings of the juvenile court because those findings were against the weight of the evidence.

We are disturbed by the suspicious circumstances out of which this case developed. It smacks of forum shopping. In a vexing and unintended way, the decisions of the trial and appellate courts of Nebraska in this case have rewarded the mother for snatching the children from Missouri and then initiating in Nebraska a campaign against the father that she had been unable to sustain in Missouri. For this reason, once the initial emergency adjudication was completed in July 1991, we believe the Nebraska and Missouri courts should have arranged to have any further adjudication transferred back to the court of original and continuing jurisdiction in Missouri. However, the record indicates that the Missouri court acceded to the Nebraska court's desire to further adjudicate the case, so this appeal, and the factual findings of the juvenile court, are properly before us.

When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts

rather than another. *In re Interest of L. W.*, 241 Neb. 84, 486 N.W.2d 486 (1992). Of crucial importance to us is the fact that the trial judge observed the witnesses in person, which, in this type of proceeding, is of immeasurable value in determining which witnesses to believe. On paper, the testimony of the children is credible. Obviously, while observing the children in his courtroom, the trial judge found their testimony not just credible, but compelling. Though certainly not overwhelming in volume or probativeness, there is unchallenged or properly admitted expert testimony in the record that corroborates the testimony of the children. Therefore, we reject the father's argument that the factual findings of the juvenile court are not supported by the greater weight of the evidence.

## V. CONCLUSION

We affirm the judgment of the district court affirming the judgment of the juvenile court, but we reiterate the jurisdictional limitation on the juvenile court that we set out earlier in this opinion. The circuit court of Buchanan County, Missouri, retains continuing custodial jurisdiction of the children. The Greeley County Court must communicate with the Missouri court and reach a mutual determination on the more appropriate forum for the case before further adjudicating the custody of the children. Finally, the Greeley County Court is without jurisdiction to render a permanent custody order concerning the children unless the Missouri court affirmatively declines jurisdiction or fails to take appropriate action.

AFFIRMED.